**BAMBERGER & FEIBLEMAN and Cannavo & Ripley, Appellants– Plaintiffs,**

v.

**INDIANAPOLIS POWER & LIGHT COMPANY, Appellee– Defendant.**

No. 49A02–9510–CV–590.

Court of Appeals of Indiana.

May 28, 1996.

D. Robert Webster, Bamberger & Feibleman, Indianapolis, for appellant.

Robert C. Crews II, Indianapolis Power & Light Co., Indianapolis, Edward O. Delaney, Stanley C. Fickle, Nicholas K. Kile, Barnes & Thornburg, Indianapolis, for appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

The law firms of Bamberger & Feibleman ("Bamberger") and Cannavo & Ripley ("Cannavo") appeal from the trial court's entry of summary judgment in favor of Indianapolis Power & Light Company ("IPL"). On September 16, 1994, Bamberger and Cannavo filed an action against IPL and sought damages resulting from the closure of their offices during an electrical power outage. They asserted two theories of liability against IPL: strict liability and negligence.

Bamberger and Cannavo moved for summary judgment on all issues. IPL filed a cross-motion for summary judgment based on the economic loss rule. Following a hearing, the trial court held that the economic loss rule precluded recovery on both the strict liability and negligence claims. The court granted IPL's cross-motion for summary judgment and dismissed the complaint with prejudice.

We affirm.

### ISSUES

The parties present two issues for our consideration which we restate as:

1. Whether a claim arising from an electrical power outage that alleges only economic losses can be maintained against a public utility under the Indiana Product Liability Act.

2. Whether the economic loss rule precludes a customer from recovering economic losses arising from an electrical power outage under a negligence theory when there was no physical harm to persons or property.

### FACTS

Bamberger and Cannavo are law firms practicing on Monument Circle in Indianapolis. IPL is a public utility that provides electrical service to Indianapolis and the surrounding areas. On or about June 6, 1994, electrical service to the law offices was interrupted due to a power outage allegedly

caused by equipment failure in a conduit located beneath Market Street. The law firms were forced to close their offices on June 6 and 7, 1994. Cannavo avers that it was unable to reopen until June 9, 1994.

The only losses claimed by Bamberger and Cannavo are those that resulted from their inability to work while their law offices were closed. Specifically, Bamberger alleged damages of $9,788.54 for lost billable time by five lawyers, one consultant and a paralegal, lost time of staff employees, lost rental value of the law offices and lost value of access to the parking garage. Cannavo sought damages for lost billable hours amounting to $4,800.00.[1]

## DISCUSSION AND DECISION

### Standard of Review

■ Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Terra–Products, Inc. v. Kraft General Foods, Inc.*, 653 N.E.2d 89, 91 (Ind.Ct.App. 1995), *trans. denied.* The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which can be determined as a matter of law. *Terra–Products, Inc.*, 653 N.E.2d at 91. The trial court's grant of summary judgment is clothed with a presumption of validity and the appellant bears the burden of proving that the trial court erred. *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind. 1993) (citation omitted). When reviewing a motion for summary judgment, this court applies the same standard utilized by the trial court, and we resolve any doubt as to a fact, or an inference to be drawn therefrom, in favor of the party opposing summary judgment. *Gilliam v. Contractors United, Inc.*, 648 N.E.2d 1236, 1238 (Ind.Ct.App.1995), *trans. denied.* We will affirm a trial court's grant of summary judgment if it is sustainable on any theory found in the evidence designated to the trial court. *Auffenberg v.*

*Board of Trustees of Columbus Regional Hosp.*, 646 N.E.2d 328, 330 (Ind.Ct.App. 1995). Cross-motions for summary judgment do not alter our standard of review; rather, our inquiry remains whether a genuine issue of material fact exists which requires a trial on the merits. *Walling v. Appel Serv. Co.*, 641 N.E.2d 647, 649 (Ind.Ct. App.1994).

### Issue One: Strict Product Liability

■ Bamberger and Cannavo maintain that IPL is liable under the Indiana Product Liability Act (the "Act")[2] for damages caused by the power outage. The law firms contend that the statute can and should be construed to permit recovery for economic losses arising from the interruption of electrical service to their law offices. We cannot agree.

We first consider the Act which then provided in relevant part:

> One who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to his property is subject to liability for *physical harm* caused by that product *to the user or consumer or to his property* if that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition, and if:
>
> (1) The seller is engaged in the business of selling such a product; and
>
> (2) The product is expected to and *does reach the user or consumer* without substantial alteration in the condition in which it is sold by the person sought to be held liable under this chapter.

IND.CODE § 33–1–1.5–3(a) (emphasis added). Physical harm is defined in the statute as:

> bodily injury, death, loss of services, and rights arising from any such injuries, as well as sudden, major damage to property. The term does not include gradually evolv-

---

1. We heard oral argument on April 25, 1996.

2. The Product Liability Act is presently codified at Indiana Code §§ 33–1–1.5–1 through 33–1–

1.5–10 and includes the substantial amendments recently enacted by the General Assembly. *See* House Enrolled Act 1741 (Public Law 278–1995).

ing damage to property or economic losses from such damage.

IND.CODE § 33–1–1.5–2. Here, the threshold question is whether the product has been placed into the stream of commerce. A plain reading of the statute suggests that it does not apply in this case because the allegedly defective product did not reach the user or consumer. Our courts have specifically addressed this question.

■ As the law firms contend, electricity can be a product under the Act. *See Public Serv. Ind., Inc. v. Nichols,* 494 N.E.2d 349, 355 (Ind.Ct.App.1986). However, the electricity must be in a marketable and marketed state at the time it causes the injury in order to be treated as a product under the strict liability doctrine. *Id.* Thus, it must be reduced from a transmission voltage to a consumption voltage. *Id.*

■ In deciding *Nichols,* we followed *Petroski v. Northern Indiana Public Service Co.,* 171 Ind.App. 14, 354 N.E.2d 736 (1976), *trans. denied.* The plaintiff in *Petroski* had received injuries when he touched an electrical distribution line, and he brought an action against the public utility which owned and maintained the line. The utility company moved for judgment on the evidence after the plaintiff had presented his evidence to the jury, and the trial court granted the motion. In affirming the judgment on the issue of strict liability, we stated that a literal sale of goods is not necessary for application of the doctrine of strict liability.[3] *Id.* at 30, 354 N.E.2d at 747. Rather, the test is "whether the product has been placed in the stream of commerce," that is, whether the electricity has reached its destination. *Id.* Writing for the court in *Petroski,* Judge Staton observed:

> Technically, until the electricity reaches its destination in a home or factory, it is transmitted by equipment over lines under the exclusive control of NIPSCO. The electric company's transmission and distribution lines are not a part of the end product which reaches the consumer as in the case of bottles and cans which are a part of the finished product.

*Id.*

Here, the electricity had not reached its destination and, therefore, had not been placed into the stream of commerce. Instead, the factual basis for the claim was the failure of the product to reach the user or consumer. The alleged "defect" existed in the underground power lines, which are not a part of the end product. *See id.*

Both the Indiana Product Liability Act and relevant case law establish that IPL cannot be liable under the Act for an electrical power outage where, as here, no product was delivered. Thus, on this issue we need not consider whether Bamberger and Cannavo could recover purely economic damages under the statute. The trial court properly granted summary judgment on the strict product liability claim.

### Issue Two: Negligence

■ Bamberger and Cannavo next contend the trial court erred when it held as a matter of law that they could not recover on a negligence theory. IPL responds that summary judgment was properly entered in its favor because economic losses that do not result from physical harm to person or property are not recoverable in a negligence action. We agree that the damages which the law firms allege to have incurred are not recoverable.

■ Our analysis begins with the proposition that summary judgment is rarely appropriate in a negligence action. *Colen v. Pride Vending Serv.,* 654 N.E.2d 1159, 1162 (Ind.Ct.App.1995), *trans. denied.* However, when the undisputed material facts negate at least one element of a claim, judgment as a matter of law is appropriate. *Id.* The elements of negligence are: (1) a duty; (2) failure to adopt the standard of care which is required by the duty; and (3) an injury resulting from a breach of the standard of care. *Petroski,* 171 Ind.App. at 18, 354 N.E.2d at 741. Whether a duty exists is a

---

**3.** The case was decided under strict liability in tort as embodied in § 402A of the RESTATEMENT (SECOND) OF TORTS (1965). In 1978, the Indiana General Assembly enacted the Strict Product Liability Act and incorporated § 402A nearly verbatim. *Reed v. Central Soya Co.,* 621 N.E.2d 1069, 1073 (Ind.1993), *modified on other grounds,* 644 N.E.2d 84 (Ind.1994).

question of law to be determined by the court, but whether the defendant breached that duty and whether that breach proximately caused injury to the plaintiff are generally questions to be determined by the trier of fact. *MacDonald v. Maxwell,* 655 N.E.2d 1249, 1251 (Ind.Ct.App.1995).

A duty in negligence may arise by statute or by operation of law. *South Eastern Ind. Natural Gas Co. v. Ingram,* 617 N.E.2d 943, 951 (Ind.Ct.App.1993), *trans. denied.* Indiana Code § 8–1–2–4 imposes upon IPL a duty to furnish reasonably adequate service and facilities. IPL concedes that it must exercise "reasonable diligence in providing a regular and uninterrupted supply of energy." In addition, our courts have recognized the common law duty of a public utility to conform its conduct for the benefit of the public, its customers and third persons who, with reasonable foreseeability, might be affected by the utility's provision of service. *Ingram,* 617 N.E.2d at 951.

Despite the existence of a duty to exercise reasonable diligence, IPL maintains that Bamberger and Cannavo did not incur a compensable injury. Indiana recognizes recovery of lost profits in a tort action. *Babson Bros. Co. v. Tipstar Corp.,* 446 N.E.2d 11, 15 (Ind.Ct.App.1983), *trans. denied; Indiana Bell Tel. Co. v. O'Bryan,* 408 N.E.2d 178, 184 (Ind.Ct.App.1980). However, when a negligence action is premised on the failure of a product to perform as expected, economic losses are not recoverable unless such failure also causes personal injury or physical harm to property other than to the product itself. *Martin Rispens & Son v. Hall Farms, Inc.,* 621 N.E.2d 1078, 1091 (Ind. 1993). This principle has been termed the economic loss rule. *See Runde v. Vigus Realty, Inc.,* 617 N.E.2d 572, 575 (Ind.Ct.App. 1993). Economic loss is defined as:

> the loss of profits because the product is inferior in quality and does not work for the general purposes for which it was manufactured and sold, and includes such incidental and consequential losses as lost profits, rental expense and lost time.

*Martin Rispens,* 621 N.E.2d at 1089.

In *Martin Rispens,* a watermelon farmer's crop was ruined due to a fruit blotch allegedly caused by bacteria from watermelon seeds. The farmer sued the seed retailer and seed grower for lost profits and sought recovery on several theories, one of which was negligence. The supreme court held that economic losses were not recoverable in the negligence action. *Id.* at 1089–91.

Our court has been reluctant to extend the economic loss rule to all actions for negligence. *See, e.g., Runde,* 617 N.E.2d at 575. Here, as we have indicated, the factual basis for the claim rests upon the failure to deliver the product, electricity. In *Martin Rispens,* the product was manufactured and delivered, but the fact that the product was in the hands of the consumers did not determine the outcome in that case. Although there is a distinction between electricity that is delivered but fails to perform as expected and electricity that is not delivered at all, the distinction does not matter for purposes of the economic loss rule.

At the heart of the question of whether economic damages can be recovered under a negligence theory is the basic distinction between the theories of tort and contract law. *Runde,* 617 N.E.2d at 574 (citation omitted). Negligence theory protects interests related to safety or freedom from physical harm. This includes not only personal injury but damage caused by defective personal property. *Id.* at 574–75. However, when there is no accident and no physical harm so that the only loss is pecuniary in nature, courts have denied recovery under the rule that purely economic interests are not entitled to protection against mere negligence. *Id.* at 575 (citing W. PROSSER, HANDBOOK ON THE LAW OF TORTS § 101, at 665 (4th ed. 1971)).

Here, Bamberger and Cannavo seek damages consisting of lost billable hours, lost rental value, and lost use of parking facilities, which are solely economic losses. The law firms do not allege actual physical harm to persons or property. Rather, they contend that they suffered harm to their property interest in the practice of law when an interruption of electrical service prevented them from working. Citing Abraham Lincoln for the maxim that "a lawyer's time and advice

are his stock in trade," Bamberger and Cannavo argue that an impairment of their opportunity to practice law, to provide time and advice for a fee, is tantamount to physical harm to property. The firms cite no authority for that proposition, and we are not persuaded that an intangible property interest in the practice of law can suffer physical harm.

The law firms also characterize the economic loss rule is an "anachronism" and maintain that "had Appellants' luck been star-crossed and persons injured, Appellants could presumably recover." Our supreme court has rejected this argument and concluded that the economic loss rule, based upon the distinction between contract and tort claims, is neither anachronistic nor turns on luck:

> "The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumers' demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will."

*Martin Rispens,* 621 N.E.2d at 1090 (quoting *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 23, 403 P.2d 145, 151 (1965)).

We decline Bamberger and Cannavo's invitation to equate the loss of the opportunity to practice law with physical harm to property. Absent injury to persons or property, Bam-

berger and Cannavo cannot recover economic damages. The undisputed facts in this action negate the damage element of the negligence claim. The trial court properly entered summary judgment in favor of IPL on that theory.

Affirmed.

BAKER and RUCKER, JJ., concur.