**Fred KAHRS, Dorothy Kahrs, Robert Cook, and Elizabeth Cook, Appellants–Plaintiffs,**

v.

**Jeffrey CONLEY, Jamie Arnett, Transit Homes of America, Inc., John Doe, and Mid State Paving, Inc., Appellees– Defendants.**

No. 06A04–9911–CV–491.

Court of Appeals of Indiana.

May 25, 2000.

Rehearing Denied July 6, 2000.

Gregory L. Caldwell, Noblesville, Indiana, Attorney for Appellants.

Timothy J. Abeska, David R. Kibbe, Roemer & Mintz, LLP, South Bend, Indiana, Attorneys for Appellees.

## OPINION

KIRSCH, Judge

Fred Kahrs ("Kahrs"), Robert Cook ("Cook") and their wives (together referred to as "Plaintiffs") appeal the trial court's final order granting summary judgment in favor of Transit Homes of America, Inc. ("Transit"). Plaintiffs raise the following issue for review: whether there are genuine issues of material fact that preclude summary judgment in this case.

We affirm.

### FACTS AND PROCEDURAL HISTORY

Transit is in the business of transporting modular homes manufactured by third parties. In September 1993, Transit leased from Jamie Arnett ("Arnett") a tractor to be used in this business. In connection with this lease, Transit and Arnett entered into an Equipment Contract and a Contractor Agreement. Under the agreements, Arnett agreed that his relationship to Transit was that of an independent contractor. He further agreed to hire, at his expense, all drivers, driver helpers, and other laborers necessary to transport the modular homes. Arnett opted to drive the tractor himself and hired Jeffrey Conley ("Conley") to drive an escort vehicle.

On May 10, 1994, Cook was a passenger in a truck being operated by Kahrs. Kahrs and Cook were driving in Boone County when construction on the roadway required them to stop. While stopped, Conley's escort vehicle struck them from behind, causing injury to both Cook and Kahrs.

Plaintiffs filed a complaint against Arnett, Conley, Transit, Mid State Paving, Inc. (the company overseeing the road construction), and John Doe (Mid State's employee at the construction site).[1] The complaint alleged, in pertinent part, that Cook and Kahrs were injured in the May 10, 1994 accident; that Conley was employed by or acting as the agent of Arnett; that the collision was the result of Conley's careless, reckless and negligent operation of the vehicle; and that Transit and Arnett were negligent in the employment of Conley. The trial court granted Transit's motion for summary judgment, and entered a final judgment on the order on May 17, 1999. Plaintiffs now appeal.

### DISCUSSION AND DECISION

The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which can be determined as a matter of law. *Bamberger & Feibleman v. Indianapolis Power & Light Co.*, 665 N.E.2d 933, 936 (Ind.Ct.App.1996). When reviewing a grant of summary judgment, this court applies the same standard as the trial court. *City of Fort Wayne v. Kotsopoulos*, 704 N.E.2d 1069, 1070 (Ind.Ct.App.1999). Summary judgment is granted when the designated evidence reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Markley Enterprises, Inc. v. Grover*, 716 N.E.2d 559, 564 (Ind.Ct.App.1999); Ind. Trial Rule 56(C). "The trial court's grant of summary judgment is clothed with a presumption of validity and the appellant bears the burden of proving that the trial court erred." *Bamberger & Feibleman*, 665 N.E.2d at 936.

---

1. Transit was the only defendant who moved for summary judgment, and Arnett, Conley, Mid State, and John Doe are not parties to this appeal. Conley has been dismissed from this lawsuit with prejudice. At the initiation of this appeal, Plaintiffs had a motion pending for a default judgment against Arnett.

■ In determining whether summary judgment is appropriate, we construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party. *Markley Enterprises,* 716 N.E.2d at 563–64. The parties designated the same evidence to the trial court. *Record* at 50. Although the parties agree about the relevant facts, they disagree as to the inferences to be drawn from those facts.

■ In a negligence action, summary judgment is rarely appropriate. *Bamberger & Feibleman,* 665 N.E.2d at 937. However, a defendant in a negligence action may obtain summary judgment by demonstrating that the undisputed material facts negate at least one element of the plaintiff's claim. *Jacques v. Allied Bldg. Services of Indiana, Inc.,* 717 N.E.2d 606, 608 (Ind.Ct.App.1999). The elements of negligence are: (1) a duty; (2) failure to adopt the standard of care that is required by the duty; and (3) an injury resulting from a breach of the standard of care. *Bamberger & Feibleman,* 665 N.E.2d at 937. The only element at issue in this case is whether Transit owed Plaintiffs a duty under the circumstances. Whether a duty exists is generally a question of law for the court to determine. *Id.* at 937–38.

■ Plaintiffs allege that Transit's duty arises because Transit was negligent in the employment of Conley. Transit has no duty unless Conley is Transit's employee either directly or through Arnett. Our supreme court has noted that, although it is a complex matter to determine whether an employer-employee relationship exists, the primary consideration is the existence of a mutual belief that an employer-employee relationship exists. *Rensing v. Indiana State University Bd. of Trustees,* 444 N.E.2d 1170, 1173 (Ind.1983).[2] Additionally, there must be evidence that the employer has the right to direct and control the activities of the alleged employee.

*Dague v. Fort Wayne Newspapers, Inc.,* 647 N.E.2d 1138, 1140 (Ind.Ct.App.1995), *trans. denied.* Under both of these factors, the designated evidence clearly reveals that no employer-employee relationship existed between Transit and Conley or between Transit and Arnett.

There was no direct relationship between Transit and Conley. As set forth in the agreements with Transit, it was Arnett, not Transit, who hired Conley as an escort driver. Conley was escorting the tractor driven by Arnett, and Transit neither paid Conley nor had any control over the details of Conley's work. The Equipment Contract stated that Arnett "shall be solely responsible for the direction and control .of [Arnett's] employees including selecting, hiring, firing, supervising, directing, training, setting wages, hours and working conditions...." *Record* at 47. While Conley acted as an escort, Transit had no communication with Conley. Transit could not fire Conley, could not tell him what car to drive, or when he could make a stop while on the road. Conley did not think that he was an employee of Transit. Conley was not an employee or an independent contractor of Transit.

■ Transit also had no duty to Plaintiffs through its relationship with Arnett. Transit and Arnett entered into contracts that specifically stated that Arnett was an independent contractor of Transit. With this language, neither Transit nor Arnett should have believed that they had entered into an employer-employee relationship. Furthermore, Transit had no control over Arnett. The Equipment Contract required Arnett to "direct the operation of [his] equipment in all respects including choice of any lawful routes, the number of drivers and helpers per unit of equipment, points for service of equipment, rest stops, etc." *Record* at 47. Transit was not interested in the manner in which the modular

---

**2.** Although the court in *Rensing* was addressing whether an employer-employee relationship existed in the context of a worker's compensation issue, the parties' belief in the existence of an employer-employee relationship is a factor also considered under the RESTATEMENT (SECOND) OF AGENCY § 220(i) (1958).

home was transported, but was only interested in the result—that the homeowner receive the home. *See Dague,* 647 N.E.2d at 1141 (citing *Brechbiel v. Hentgen,* 103 Ind.App. 481, 8 N.E.2d 1007, 1008 (1937)). Under these circumstances, Arnett was not an employee of Transit.

■ Finally, the terms of Conley's working arrangements reveal that Arnett hired him as an independent contractor. On the day of the accident, Conley was driving his own car. Arnett paid Conley in cash on the basis of the number of miles Conley drove as an escort. Conley worked on a job-to-job basis, being called by Arnett just the day before each escorting job. When Conley's relationship with Arnett ended, it was not because he was fired but merely because Arnett stopped calling him for jobs. Furthermore, Conley did not believe he was an employee of Arnett, but instead considered himself an independent contractor.

The designated evidence reveals that Transit did not hire Conley. Instead, Arnett was an independent contractor of Transit, and Conley was an independent contractor of Arnett. " '[T]he long-standing general rule has been that a principal is not liable for the negligence of an independent contractor.' " *Carie v. PSI Energy, Inc.,* 715 N.E.2d 853, 855 (Ind.1999) (quoting *Bagley v. Insight Communications Co.,* 658 N.E.2d 584, 586 (Ind.1995)). Indiana courts, however, have recognized the following five exceptions to the general rule:

(1) where the contract requires the performance of intrinsically dangerous work;

(2) where the principal is by law or contract charged with performing the specific duty;

(3) where the act will create a nuisance;

(4) where the act to be performed will probably cause injury to others unless due precaution is taken; and

(5) where the act to be performed is illegal.

*Id.* (citing *Bagley,* 658 N.E.2d at 586). In *Carie,* our supreme court explained the rationale for these exceptions as follows:

"The duties associated with Indiana's five exceptions are considered non-delegable, and an employer will be liable for the negligence of the contractor, because the responsibilities are deemed "so important to the community" that the employer should not be permitted to transfer these duties to another.... The exceptions encourage the employer of the contractor to participate in the control of work covered by the exceptions in order to minimize the risk of resulting injuries."

*Id.* (quoting *Bagley,* 658 N.E.2d at 587–88 (citations omitted)).

■ Plaintiffs' complaint alleges that Transit was negligent in the employment of Conley for both failing to determine his safety record and failing to contractually require him to provide adequate financial protection for injuries to third parties. Because Transit is not Conley's employer, the negligence, if any, must arise from the negligent hiring of an independent contractor. Our supreme court recently declined to recognize the negligent hiring of an independent contractor as an independent tort. *Bagley,* 658 N.E.2d at 586–87; *Red Roof Inns, Inc. v. Purvis,* 691 N.E.2d 1341, 1344 (Ind.Ct.App.1998). Instead, the court reiterated the general rule that a principal is not liable for the negligence of an independent contractor and decided that the basic concept of negligent hiring was "subsumed" in the five existing exceptions to the general rule of non-liability. *Bagley,* 658 N.E.2d at 587; *Red Roof Inns,* 691 N.E.2d at 1343–44. "Thus, one who hires an independent contractor may be liable for the failure to exercise reasonable care to employ a competent and careful contractor only when there is a non-delegable duty based upon at least one of the five exceptions." *Red Roof Inns,* 691 N.E.2d at 1344.

■ In this case, the only exception to non-liability alleged by Plaintiffs is that federal and state motor carrier laws impose a duty on Transit. Plaintiffs cite to 49 C.F.R. 376.12 and IC 8–2.1–24–22 to create a duty from Transit to Arnett and to IC 9–20–15–2(5) to extend this duty to Plaintiffs through Conley.[3] The federal and state laws allow a carrier to transport property in equipment it does not own only under certain conditions. One of those conditions is that the lessor and carrier must enter into a lease that provides:

> "[T]he authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease."

49 C.F.R. 376.12(c)(1); IC 8–2.1–24–22(b)(4). Plaintiffs argue that because these laws require Transit to have "exclusive possession, control and use of the equipment for the duration of the lease," Transit and Arnett act as one entity when they transport modular homes. Plaintiffs contend that these laws creates a duty for Transit. We do not reach the question of whether 49 C.F.R. 376.12 or IC 8–2.1–24–22 creates a duty for Transit, because Transit is only liable for the acts of Conley if a duty to Plaintiffs is also found between Arnett and Conley.

Plaintiffs contend that the duty is extended from Arnett to Conley in IC 9–20–15–2, which provides:

> "(a) The Indiana department of transportation may grant a permit to operate a special tractor-mobile home rig on an Indiana highway to a person upon the following conditions and in accordance with the rules that the department prescribes:
>
> . . . .
>
> (5) The special tractor-mobile home rig *may* be accompanied by a distinctively marked escort vehicle."[4]

IC 9–20–15–2(a)(5) (emphasis added). Plaintiffs argue that Arnett could not operate his rig on Indiana highways without a permit and that to get a permit Arnett was required to be accompanied by an escort vehicle.[5] IC 9–20–15–2(a)(5). Although we agree that IC 9–20–15–2 requires an escort vehicle to accompany some special tractor-mobile home rigs, neither federal nor state law extends a duty from Transit to Plaintiffs for the negligent acts of Conley. Even if 49 CFR 376.12 or IC 8–2.1–24–22 requires Transit to have "exclusive possession, control and use" of Arnett's tractor, nothing in the law extends the control or the liability to the escort vehicle.

Transit cannot be held liable for negligently hiring Conley or for Conley's alleged negligence. Conley was hired to drive a car. The record contains no evi-

---

**3.** Transit argues that the use of an escort vehicle for a "special tractor-mobile home rig" is optional because the word "may" is used in IC 9–20–15–2(a)(5). Although IC 9–20–15–2 is not carefully worded, IC 9–20–15–3 reveals that certain smaller special rigs are "not subject to the *requirement* of an escort vehicle." IC 9–20–15–3 (emphasis added). Read together, escorts must be used with the larger rigs.

**4.** At the time of the accident, IC 9–13–2–171 defined "special tractor-mobile home rig" to mean "any combination of a mobile home or sectionalized building and a towing vehicle having a width greater than one hundred forty-eight (148) inches and not greater than one hundred seventy-two (172) inches at the

base and: (1) a combined overall length not greater than ninety-five (95) feet . . .; (2) a height not in excess of fourteen (14) feet, six (6) inches; or (3) both of the dimensions in subdivisions (1) and (2)."

**5.** It is not clear whether IC 9–20–15 applies to Arnett's tractor-mobile home rig. IC 9–20–14 allows the department of transportation to issue a permit to tractor-mobile home rigs *without the requirement of an escort.* Tractor-mobile home rigs, as defined in IC 9–13–2–181, are generally smaller than the "special" tractor-mobile home rigs. Plaintiffs have provided no information concerning the size of the rig that was driven by Arnett, so it is not clear which part of IC 9–20 applies.

dence that he was a bad driver or that he had a bad driving record. Conley successfully escorted Arnett's vehicle 150 times before the accident. In this case, the job of escorting does not fall within any of the five exceptions to the general rule of non-liability of the principal for the acts of an independent contractor. We find that as a matter of law, Transit owed no duty to Plaintiffs. The trial court correctly concluded that summary judgment was appropriate.

Affirmed.

BAKER, J., and RILEY, J., concur.