

**FILED**

Sep 18 2020, 8:49 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Jeffrey C. Gerish
Plunkett Cooney
Bloomfield Hills, Michigan


Pamela A. Paige
Plunkett Cooney
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
ALLEN COUNTY WAR
MEMORIAL COLISEUM

Michael H. Michmerhuizen
Kevin K. Fitzharris
Barrett McNagny LLP
Fort Wayne, Indiana

# I N   T H E
# COURT OF APPEALS OF INDIANA

Michaele Schon and Neal
Schon,

*Appellants-Plaintiffs,*

v.

Mike Frantz, ESG Security, Inc.,
Allen County War Memorial
Coliseum, and Live Nation
Worldwide, Inc.,

*Appellees-Defendants*

September 18, 2020

Court of Appeals Case No.
20A-CT-741

Appeal from the Allen Superior
Court

The Honorable Craig J. Bobay,
Judge

Trial Court Cause No.
02D02-1708-CT-426

**Crone, Judge.**

## Case Summary

Michaele Schon was allegedly injured at a concert at the Allen County War Memorial Coliseum (Coliseum). She and her husband Neal filed a complaint for damages against the Coliseum and other entities. The Coliseum filed a motion for summary judgment, asserting that it was entitled to immunity as a political subdivision under the Indiana Tort Claims Act (ITCA) and denying liability based on various other theories. The trial court granted the motion. On appeal, the Schons argue that the trial court deprived them of an opportunity to conduct additional discovery and that the Coliseum is not entitled to immunity as a political subdivision under the ITCA. We disagree and therefore affirm.

## Facts and Procedural History

The Coliseum is a multipurpose arena that hosts sporting events, concerts, and other entertainment events. The Coliseum is owned by the Allen County Board of Commissioners (Commissioners) and is operated by Allen County through the Allen County War Memorial Coliseum Board of Trustees (Trustees).

Neal is a member and founder of the rock band Journey. Michaele travels with the band and attends every show. She greets fans and takes video of the band during the show.

The Commissioners executed a security services agreement (Security Agreement) with ESG Security, Inc. (ESG), pursuant to which ESG agreed to

provide security services at the Coliseum. Specifically, the Security Agreement provides as follows:

> WHEREAS, [the Commissioners] through [their] Allen County War Memorial Coliseum Board of Trustees [operate] the Allen County War Memorial Coliseum and support facilities in Fort Wayne, Allen County, Indiana (collectively, the "Venue") and incidental thereto [host] sporting events, conferences, expositions and other events; and
>
> WHEREAS, the parties wish to provide for the availability of ESG's services as the security provider for events hosted or produced by [the Commissioners] at the Venue and for general premises security at the Venue.

Appellants' App. Vol. 2 at 97. An event is defined as an "activity for which tickets are sold to the public or a private activity [that] is held pursuant to a contract between [the Commissioners] and third parties." *Id.* Pursuant to the Security Agreement, the Commissioners agreed to

> Designate a representative for each event to coordinate ESG's services with others involved, but under no circumstances will [the Commissioners] have the right or responsibility to control ESG personnel's work activities, set or enforce their wages, hours and/or other conditions of employment or in any way treat and/or direct them as joint officers, supervisors and/or employees and/or agents of any third parties holding or presenting the event.

*Id.*

> The [Commissioners assume] no responsibility whatever for any property placed in or upon said Venue by ESG, and [the

> Commissioners are] hereby expressly relieved and discharged from any and all liability for any loss, injury or damage to the person or property that may be sustained by reason of the services rendered to [the Commissioners] or any part thereof under this contract.

*Id.* at 100.

[5] The incident giving rise to the Schons' complaint occurred on March 31, 2017, when Journey was performing at the Coliseum. Michaele was at Journey's show that night. Throughout Journey's performance, Michaele filmed the band, moving back and forth between the front and the side of the stage. *Id.* at 125. In her deposition, she testified that the Coliseum did not "give a credential," but she had a "laminate." *Id.* at 128. The final song performed by Journey before the encore was "Don't Stop Believing." *Id.* at 124. During that song, there was a confetti release. Michaele moved to the front of the stage to film the confetti release. *Id.* at 125. An ESG security guard, Mike Frantz, was standing nearby. *Id.* at 127. Michaele testified that while she was filming the confetti release, Frantz, without saying a word, put two hands on her and threw her into the "PA." *Id.* at 128. She further testified that two of Journey's own security guards had to remove Frantz "off" her. *Id.* In his deposition, Frantz testified that he asked Michaele if she was with the band, and she said yes. *Id.* at 112. He testified that he asked her if she had a lanyard, laminate, or credentials, and he did not hear an answer or see her mouth move, so he put his arms out and walked her out of the barricaded area. *Id.* He testified that he

never had physical contact with Michaele and never invaded her personal space. *Id*. at 114.

[6] On August 10, 2017, the Schons filed a complaint against Frantz, ESG, and the Coliseum, asserting the following claims: respondeat superior - assault and battery; intentional infliction of emotional distress; negligence; negligence/premises liability; negligent hiring, supervision, and retention of security personnel; and negligent undertaking.[1] *Id*. at 42-55. The Schons later amended their complaint to add Live Nation Worldwide, Inc., which had executed a license agreement with the Trustees for Journey to perform at the Coliseum on the day of the incident.

[7] On November 8, 2019, the Coliseum filed a motion for summary judgment, a brief in support of its motion, and a designation of evidence. The Coliseum asserted that there is no genuine issue of material fact and it is entitled to judgment as a matter of law on three grounds: (1) the Coliseum is a political subdivision under the ITCA and as such is immune from liability for the act or omission of anyone other than itself or its employees; (2) ESG is an independent contractor of the Coliseum, and the Coliseum, as a principal, is not liable for the actions of its independent contractors; and (3) as for the Schons' negligent hiring claim, there is no claim in Indiana for the negligent hiring of an independent contractor, and even if ESG was an employee of the Coliseum, the

---

[1] The Schons also alleged a claim for loss of consortium, but the trial court granted summary judgment in favor of the Coliseum on that claim, which the Schons do not appeal.

Coliseum would not be liable because there is no evidence that the Coliseum had knowledge that ESG and/or Frantz were in the habit of misconducting themselves. *Id*. at 57, 61, 67. In support of its motion, the Coliseum designated evidence including the affidavit of Randy L. Brown, executive vice president and general manager of the Coliseum, the Security Agreement, excerpts from the depositions of Frantz and Michaele, and the amended complaint. *Id*. at 88-89, 92-146.

[8] On November 26, 2019, the Schons filed a motion for an extension of time to respond to the Coliseum's summary judgment motion, which the trial court granted. On January 6, 2020, before the new deadline for filing their response expired, the Schons filed a second motion for an extension of time, and the trial court set a hearing on the matter. On January 9, 2020, the Schons untimely filed their brief in opposition to the Coliseum's summary judgment motion and a designation of evidence, which included printouts of two webpages from the Coliseum's website and the license agreement between the Trustees and Live Nation. On January 15, 2020, the Schons then filed an unopposed motion to deem their response timely filed, which included the following:

> 5. Out of an abundance of caution, although the [Schons] would have preferred to take a deposition to support their response, the [Schons] filed their Response Brief on January 9, 2020, two days after the initial deadline.
>
> 6. The [Schons] will rely on this Filed Response.
>
> ….

9.  If the Court grants this Motion, the hearing on the Second Motion to Extend Time to Respond to Summary Judgment will be moot and the hearing may be vacated.

Appellee's App. Vol. 2 at 34.  The trial court granted this motion and vacated the hearing on the second motion for an extension of time.[2]

[9]  On February 11, 2020, a summary judgment hearing was held, at which the Schons argued that they needed to conduct further discovery.  On March 11, 2020, the trial court issued its final appealable order granting the Coliseum's motion for summary judgment on the following grounds: (1) pursuant to the ITCA, the Coliseum is a political subdivision that is entitled to immunity from losses that result from the conduct of anyone other than the Coliseum or the Coliseum's employees; (2) ESG is an independent contractor, and the Coliseum is not liable for the negligence of its independent contractor; (3) there are no applicable exceptions to the general rule that a principal is not liable for the negligence of an independent contractor; and (4) the Coliseum is not liable on the Schons' negligent hiring claim because there is no evidence that the Coliseum knew that ESG and Frantz were in the habit of misconducting themselves.  The trial court also found that the case had been pending since

---

[2] The Coliseum recognizes that the trial court did not have the authority to deem the Schons' response to summary judgment timely but observes that a trial court has the discretion to grant an extension of time when the request for an extension is made within the deadline for a response.  Ind. Trial Rule 56(I); *Seufert v. RWB Med. Income Props. I Ltd. P'ship*, 649 N.E.2d 1070, 1073 (Ind. Ct. App. 1995).  Given that the Schons filed their second motion for extension of time within the deadline for their response, the Coliseum suggests, and we agree, that the trial court did not, technically speaking, deem the response timely but in effect granted the Schons an extension of time.

August of 2017, the Schons had been granted at least one, if not two motions to enlarge time to file their response, and it was "not sympathetic to the argument that the Schons need more time to depose other witnesses." Appealed Order at. 19. This appeal ensued.

## Discussion and Decision

[10]   The Schons claim that the trial court improperly granted the Coliseum's summary judgment motion. "We review a trial court's ruling on a summary judgment motion de novo, applying the same standard as the trial court." *Chariton v. City of Hammond*, 146 N.E.3d 927, 931 (Ind. Ct. App. 2020)*, trans. denied*. Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C); *Chariton*, 146 N.E.3d at 931. "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (citations omitted).

[11]   "In conducting our review, we consider only those matters that were designated to the trial court during the summary judgment stage." *Chariton*, 146 N.E.3d at 931. We must construe all facts and reasonable inferences drawn from them in favor of the nonmoving party. *Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1282 (Ind. 2006). Under Indiana's summary judgment standard, the moving

party bears the onerous burden of affirmatively negating the opposing party's claim. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). If the moving party carries its burden to demonstrate the absence of any genuine issue of fact and that it is entitled to judgment as a matter of law, the nonmoving party "may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial." *Biedron v. Anonymous Physician 1*, 106 N.E.3d 1079, 1089 (Ind. Ct. App. 2018), *trans. denied* (2019). "Mere speculation is insufficient to create a genuine issue of material fact to defeat summary judgment." *Id.* On appeal, the nonmoving party bears the burden of persuading us that the grant of summary judgment was erroneous, but we will nevertheless "carefully assess the trial court's decision to ensure that he [or she] was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009) (quoting *Blake v. Calumet Constr. Corp.*, 674 N.E.2d 167, 169 (Ind. 1996)). We may affirm a summary judgment ruling if it is sustainable on any legal theory or basis found in the evidentiary matter designated to the trial court. *W. Am. Ins. Co. v. Cates*, 865 N.E.2d 1016, 1020 (Ind. Ct. App. 2007), *trans. denied*.

## Section 1 - The trial court did not deprive the Schons of an opportunity to conduct additional discovery.

The Schons assert that the trial court erred in granting summary judgment before allowing them to complete discovery. In support, they cite *American Management, Inc. v. Riverside National Bank*, 725 N.E.2d 930 (Ind. Ct. App. 2000), for the general rule that "[i]t is generally improper to grant summary

judgment when requests for discovery are still pending, unless pending discovery is unlikely to develop a genuine issue of material fact." *Id.* at 933. They also cite *Turner v. Boy Scouts of America*, 856 N.E.2d 106 (Ind. Ct. App. 2006), arguing that "where key persons 'have not yet been made available for discovery,' a court 'cannot draw any conclusions as a matter of law regarding [the plaintiff's] claims … [and] even after discovery is complete, there might be issues of material fact that prevent summary judgment disposition.'" Appellants' Br. at 22 (quoting *Turner*, 856 N.E.2d at 115). Both cases are clearly distinguishable because the parties challenging summary judgment had filed motions to compel discovery, which the trial court denied. *American Management*, 725 N.E.2d at 933 (concluding that defendant's claim that documents sought would have supported him was unavailing and affirming summary judgment on alternative grounds); *Turner*, 856 N.E.2d at 112-113 (reversing trial court's denial of motion to compel discovery).

[13]     Here, the Schons did not file a motion to compel discovery. Further, they requested and were granted essentially two extensions of time and specifically informed the trial court that they would rely on their response and that a hearing for a second extension of time would be moot. Thus, the Schons knowingly abandoned their request to conduct additional discovery. Under these circumstances, we cannot say that the trial court deprived the Schons of the opportunity to conduct additional discovery.

## Section 2 – The Coliseum is a political subdivision under the ITCA.

[14]     The Schons also argue that summary judgment is improper because the trial court erred in finding that the Coliseum is a political subdivision entitled to immunity under the ITCA, Indiana Code Chapter 34-13-3.  In addressing this argument, we are mindful of our well-established rules of statutory interpretation:

> The first step in interpreting a statute is to determine whether the Legislature has spoken clearly and unambiguously on the point in question. When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. Clear and unambiguous statutes leave no room for judicial construction. However[,] when a statute is susceptible to more than one interpretation it is deemed ambiguous and thus open to judicial construction.

> And when faced with an ambiguous statute, other well-established rules of statutory construction are applicable. One such rule is that our primary goal of statutory construction is to determine, give effect to, and implement the intent of the Legislature. ….  And we do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result.

*City of N. Vernon v. Jennings Nw. Reg'l Utils.*, 829 N.E.2d 1, 4-5 (Ind. 2005) (citations omitted).

[15]     The ITCA provides in relevant part that "a governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss

results" from certain enumerated conditions and acts, including an "act or omission of anyone other than the governmental entity or the governmental entity's employee." Ind. Code § 34-13-3-3(10). "The purpose of immunity is to ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Donovan v. Hoosier Park, LLC*, 84 N.E.3d 1198, 1206-07 (Ind. Ct. App. 2017) (quoting *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003)). Another legislative purpose of the ITCA is to protect the fiscal integrity of governmental bodies. *See Harrison v. Veolia Water Indianapolis, LLC*, 929 N.E.2d 247, 253 (Ind. Ct. App. 2010) ("[O]ne of the main concerns ITCA intended to address clearly was protection of the public treasury from a multitude of tort lawsuits."), *trans. denied*. "Whether the ITCA imparts immunity to a governmental entity is a question of law for the court to decide." *Lee by & through Estes v. Bartholomew Sch. Corp.*, 75 N.E.3d 518, 525 (Ind. Ct. App. 2017). "The party seeking immunity bears the burden of proving that its conduct falls within the provisions of the ITCA." *Id.* The ITCA is in derogation of the common law, and therefore it "must be strictly construed against limitations on the claimant's right to bring suit." *Schoettmer v. Wright*, 992 N.E.2d 702, 706 (Ind. 2013) (quoting *City of Indianapolis v. Buschman*, 988 N.E.2d 791, 794 (Ind. 2013)).

[16] A "governmental entity" for purposes of the ITCA "means the state or a political subdivision of the state." Ind. Code § 34-6-2-49. "Political subdivision" for purposes of the ITCA means a:

(1) county;

(2) township;

(3) city;

(4) town;

(5) separate municipal corporation;

(6) special taxing district;

(7) state educational institution;

(8) city or county hospital;

(9) school corporation;

(10) board or commission of one (1) of the entities listed in subdivisions (1) through (9);

(11) drug enforcement task force operated jointly by political subdivisions;

(12) community correctional service program organized under IC 12-12-1; or

(13) solid waste management district established under IC 13-21 or IC 13-9.5-2 (before its repeal).

Ind. Code § 34-6-2-110.

[17] The parties focus their arguments on whether the Coliseum is a "county" or a "board or commission of" a county. The Schons argue that based on a plain reading of the statute, the Coliseum is neither. The Schons first baldly assert that the Coliseum is not a "county," as "Allen County and the Coliseum, quite clearly, are two different entities." Appellants' Br. at 17. Next, they point out that the statute's list of entities does not include a war memorial. Relying on the well-established rule of statutory construction that "the enumeration of certain things in a statute necessarily implies the exclusion of all others," they assert that because the statute's list of entities includes a county hospital, the implication is that other independent county entities, such as a war memorial, are not intended to be included within the term "county." *Id*. (quoting *Januchowski v. N. Ind. Commuter Transp. Dist.*, 905 N.E.2d 1041, 1049 (Ind. Ct. App. 2009), *trans. denied*). The Schons also assert that the Coliseum is not a "board or commission of" a county. Emphasizing the statute's use of the term "of," they contend that to include "any board or commission of another entity *appointed by* a county … would dramatically expand the scope of 'political subdivision' far beyond that provided by the statutory language[,]" particularly when the statute must be construed narrowly as one in derogation of common law. *Id*. at 18.

[18] Here, the undisputed designated materials establish that the Coliseum is not a private entity; rather "[t]he Allen County War Memorial Coliseum is owned by the Board of Commissioners of the County of Allen and operated by Allen County through the Allen County War Memorial Coliseum Board of Trustees."

Appellants' App. Vol. 2 at 92. We observe that "[i]n legal contemplation, the board of commissioners is the county." *Gonser v. Bd. of Comm'rs*, 177 Ind. App. 74, 77, 378 N.E.2d 425, 427 (1978) (quoting *Bd. of Comm'rs of Daviess Co. v. Clark*, 4 Ind. 315, 316 (1853)); *see also Bd. of Comm'rs v. Wild*, 37 Ind. App. 32, 35, 76 N.E. 256, 257 (1905) ("The county is known in law only by its board of commissioners and acts, as a county, through its board."). A board of commissioners is the county executive and transacts the business of the county in the name of "The Board of Commissioners of the County of _____." Ind. Code § 36-2-2-2. As such, Allen County is its Commissioners. The Commissioners, then, fall within the definition of a "county" or a "board or commission of" a county. Indeed, this Court has held that there is no "valid distinction between the filing of a suit against a county and the filing of a suit against a board of county commissioners for purposes of the Tort Claims Act." *Gonser*, 177 Ind. App. at 77, 378 N.E.2d at 426-27. The question becomes whether the relationship between the Commissioners and the Coliseum is such that the Coliseum also falls within those categories.

[19]     In that regard, we note that the legislature granted counties the authority to provide and maintain a memorial to honor the "courage, valor, and sacrifice" of the armed forces and others who served our country in World War I and World War II. Ind. Code § 10-18-3-1. When a county establishes such a memorial, the county is required to appoint a board of trustees "for the establishment, maintenance, management, and control of the memorial[,]" and when a trustee's term expires, the county is required to appoint a new trustee.

Ind. Code § 10-18-3-6. A trustee may be removed by the county upon a showing that the trustee is incompetent, dishonest, or not performing the duties required by law of the rules governing the board of trustees. Ind. Code § 10-18-3-21(a). The trustees are required to make an annual report to the board of county commissioners or the common council, which includes "the activities of the trustees and of the receipts and expenditures of the memorial[,]" and "prepare an annual budget and estimate for the board of commissioners and county council or common council so that adequate appropriation of funds may be made for the proper maintenance, repair, improvement, and extension of the memorial." Ind. Code § 10-18-3-16(a). In addition, "[a]ll claims for expenditures incident to the maintenance of the memorial must be in the form used for the payment of other claims by the county or city … [and] be allowed by the board of commissioners or common council in the same manner as other claims." Ind. Code § 10-18-3-16(b).

[20] Thus, Allen County, acting through its Commissioners, established the Coliseum and is operating it through the Trustees pursuant to statute. Significantly, the Trustees do not operate completely independently of the Commissioners but are answerable to them. The Commissioners own the Coliseum. The Commissioners executed the Security Agreement with ESG. If a judgment is rendered against the Coliseum in this action, it appears that it would be satisfied from the assets of Allen County. *See Gonser*, 177 Ind. App. at 77, 378 N.E.2d at 427 (observing that if judgment was rendered against board of commissioners it would be satisfied by the assets of the county). We

conclude that this relationship is sufficiently direct such that the Coliseum is not a separate entity from Allen County and/or its Commissioners for purposes of the ITCA.[3] Accordingly, the Coliseum is a political subdivision for purposes of the ITCA.

## Section 3 – The Coliseum is immune from liability under the ITCA.

[21] As a political subdivision, and thus a governmental entity entitled to the protections of the ITCA, the Coliseum is immune from liability for an "act or omission of anyone other than the governmental entity or the governmental entity's employee." Ind. Code Ann. § 34-13-3-3(10). "This subsection's immunity 'applies in actions seeking to impose vicarious liability by reason of conduct of third parties' other than governmental employees acting within the scope of their employment." *Jacks by Jacks v. Tipton Cmty. Sch. Corp.*, 94 N.E.3d 712, 717 (Ind. Ct. App. 2018) (quoting *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 481 (Ind. 2003)), *trans. denied*. For purposes of the ITCA, an "employee" is "a person presently or formerly acting on behalf of a governmental entity, whether temporarily or permanently or with or without compensation ...." Ind. Code §

---

[3] The Schons cite *Greater Hammond Community Services, Inc. v. Mutka*, 735 N.E.2d 780 (Ind. 2000), to argue that even though the Coliseum is operated by Allen County through its Commissioners, it should not be considered a political subdivision. *Mutka* is inapposite because the entity at issue was a private nonprofit corporation that merely contracted with a political subdivision. *Id.* at 784-85. The Schons also rely on *Buckley v. Standard Investment Co.*, 581 N.E.2d 920 (Ind. 1991). *Buckley*, too, is inapposite because the entity at issue, a utility, was controlled by a board of directors and a board of trustees, and neither board was answerable to the city government. *Id.* at 921-22. Specifically, the board of directors was appointed by the board of trustees, and the connection between the city government and the board of trustees was "slight" and did not "involve control over the actions or the makeup of the board." *Id.* at 922.

34-6-2-38(a).  However, the term does not include "an independent contractor[.]" Ind. Code § 34-6-2-38(b)(1).

[22]  The Schons argue that the trial court erred in finding that ESG is an independent contractor.  However, they do not present any argument other than that further discovery would have revealed facts to support their position. Because we have concluded that the trial court did not deprive the Schons of an opportunity to conduct additional discovery, we affirm summary judgment on this issue.[4]

[23]  The Schons also contend that the trial court erred in finding that there are no applicable exceptions to the general rule that a principal is not liable for the negligence of an independent contractor.  The Schons present a brief argument, asserting that two exceptions apply.  However, for the legal principles involved, the Schons cite the Coliseum's summary judgment brief located in the appellants' appendix rather than legal authority.  Because the Schons have failed to directly cite legal authority, we find this argument waived.  *See* Ind. Appellate Rule 46(A)(8)(a) (requiring that contentions in appellant's brief be supported by cogent reasoning and citations to authorities, statutes, and the appendix or parts of the record on appeal); *Loomis v. Ameritech Corp.*, 764

---

[4]  For the same reason we affirm the trial court's finding that even if ESG and/or Frantz is an employee of the Coliseum, the Coliseum would not be liable on the Schons' negligent hiring claim because there is no evidence that the Coliseum knew that ESG and/or Frantz were in the habit of misconducting themselves.

N.E.2d 658, 668 (Ind. Ct. App. 2002) (failure to present cogent argument waives issue for appellate review), *trans. denied*.

[24] Next, the Schons maintain that even if the Coliseum is entitled to immunity for all their vicarious liability claims, the ITCA does not provide immunity to the Coliseum for its own negligence. *See Bartholomew Cty. v. Johnson*, 995 N.E.2d 666, 679 (Ind. Ct. App. 2013) ("[A] governmental entity is not entitled to immunity pursuant to Indiana Code Section 34-13-3-3-(10) if the loss results from its own negligence, that is, if a loss results from an act for which it 'can be held directly liable.'") (quoting *City of Vincennes v. Reuhl*, 672 N.E.2d 495, 498 (Ind. Ct. App. 1996), *trans. denied* (1997)). Therefore, they continue, the Coliseum is still subject to liability on their claim for negligent hiring, supervision, and retention of ESG. On that issue, we note our supreme court has declined to recognize the negligent hiring of an independent contractor as an independent tort:

> Instead, [our supreme] court reiterated the general rule that a principal is not liable for the negligence of an independent contractor and decided that the basic concept of negligent hiring was "subsumed" in the five existing exceptions to the general rule of non-liability. [*Bagley v. Commc'ns Co.*, 658 N.E.2d 584, 587 (Ind. 1995); *Red Roof Inns, Inc. v. Purvis*, 691 N.E.2d 1341, 1343-44 (Ind. Ct. App. 1998), *trans. denied*.] "Thus, one who hires an independent contractor may be liable for the failure to exercise reasonable care to employ a competent and careful contractor only when there is a non-delegable duty based upon at least one of the five exceptions." *Red Roof Inns*, 691 N.E.2d at 1344.

*Kahrs v. Conley*, 729 N.E.2d 191, 195 (Ind. Ct. App. 2000), *trans. denied*. Accordingly, because ESG is an independent contractor and no exceptions apply, the protection granted to the Coliseum under the ITCA would also apply to the Schons' negligent hiring claim. We conclude that the Schons have failed to establish that the trial court erred in finding that the Coliseum is a governmental entity immune from liability under Section 34-13-3-3(10) of the ITCA. Accordingly, we affirm summary judgment in favor of the Coliseum.[5]

Affirmed.

Robb, J., and Brown, J., concur.

---

[5] While the governmental immunity statute may seem harsh, a wise man once said, "Some will win, some will lose, some were born to sing the blues." JOURNEY, DON'T STOP BELIEVING (Columbia Records 1981). In addition, because we affirm the trial court's findings that ESG is an independent contractor and that no exceptions apply, the Coliseum would not be liable even if the ITCA did not apply. *See Helms v. Carmel High Sch. Vocational Bldg. Trades Corp.*, 854 N.E.2d 345, 346 (Ind. 2006) ("[A] principal (the general contractor) is not liable for the negligence of an independent contractor (the sub) unless one of five exceptions applies.") (citing *Bagley v. Insight Communications Co.*, 658 N.E.2d 584 (Ind. 1995)).