**BUTLER–PEAK et al., Appellants,**

v.

**CUNNINGHAM et al., Appellees.**

[Cite as *Butler-Peak v. Cunningham* (2000), 138 Ohio App.3d 334.]

Court of Appeals of Ohio,
Second District, Clark County.

Nos. 99–CA–86.

Decided June 30, 2000.

*Stacey R. Pavlatos,* for appellants.

*Douglas C. Boatright,* for appellees.

BROGAN, Judge.

Once again, we enter the quagmire of underinsured motorists law in order to resolve a coverage claim made against an insurance company (in this case, Dairyland Insurance Company). According to the stipulated facts below, Debra A. Butler–Peak was involved in an accident on July 13, 1996, with a motorist insured by Nationwide Insurance Company. The liability limits of the Nationwide policy were $25,000 per person and $50,000 per accident. After Dairyland waived its subrogation claim, Nationwide paid the per person limits of $25,000, and the amounts were distributed as follows: Debra received $5,000, and Debra's husband and daughter (Richard and Leah) received $10,000 each for their derivative claims.

At the time of the accident, Debra was the named insured on a policy of insurance issued by Dairyland. The declarations page of the policy indicates that it was issued as a "new policy" on March 28, 1996, for a policy period of one year, with uninsured motorist ("UIM") coverage limits of $50,000 per person and $100,000 per accident. After Debra received payment from Nationwide, she claimed entitlement to an additional $45,000 under her UIM coverage with Dairyland. By contrast, Dairyland contended that it was entitled to set off the

entire $25,000, meaning that Debra's UIM recovery would be limited to a maximum of $25,000.

In the trial court, Dairyland did not rely on the terms of its insurance policy. Instead, Dairyland focused solely on R.C. 3937.18(A)(2) as it existed at the time the policy was issued, *i.e.*, the amended version that was intended to supersede *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809. This version of the statute states that no automobile policy shall be issued in Ohio without offering "[u]nderinsured motorist coverage, which shall * * * provide protection for insureds thereunder against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."

Based on this provision, Dairyland claimed that it was entitled to set off all amounts "available for payment" under the Nationwide policy, regardless of whether its insured (Debra) received any part of the payment. The trial court agreed, and held that Debra could recover only a maximum of $25,000 from Dairyland, even though she received just $5,000 from the tortfeasor.

On appeal, Debra's single assignment of error is that the trial court erred by letting Dairyland offset the tortfeasor's entire per person liability limit against Dairyland's per person UIM limit, when the proceeds of the tortfeasor's limits were distributed among three claimants. In particular, Debra relies on a prior decision in our district interpreting the phrase "available for payment" in a multiple claimant situation. See *Estate of Fox v. Auto Owners Ins.* (June 12, 1998), Montgomery App. No. 1456, unreported, 1998 WL 309212. Specifically, in *Fox*, we rejected a strict comparison of policy limits where the presence of multiple claimants caused an insured to receive less than the per person limit from the tortfeasor's liability policy. We took the same approach in *Berry v. Przyborowski* (Nov. 19, 1999), Miami App. No. 99–CA–21, unreported, at 4–5, 1999 WL 1043880.

The trial court in this case considered *Fox* but found it inapplicable. According to the trial court, the policy in *Fox* was issued before the amendments to the

underinsured motorist statute. As a result, the court read *Fox* as relying on pre-amendment law, which allowed stacking. Unfortunately, the trial court's interpretation is legally incorrect. First, we specifically said in *Fox* that the amended statute applied. Second, we considered the amended statute in detail before deciding that the insured could recover even if his policy limits equaled those of the tortfeasor. Therefore, contrary to the trial court's opinion, *Fox* is potentially applicable.

However, before we consider either the amended statute or *Fox*, we need to make two points. First, because the Dairyland policy was labeled a "new policy," we assume that there is no dispute that the amended statute applies. *Cf. Wolfe v. Wolfe* (2000), 88 Ohio St.3d 246, 725 N.E.2d 261, indicating that (1) every automobile liability policy has a guaranteed two-year policy period during which the policy cannot be altered; (2) commencement of each policy period brings a new contract of insurance into existence, whether the contract was classified as "new" or a "renewal"; (3) the guarantee period is not limited to the first two years of the policy, but begins on the first issue date and is calculated thereafter in two-year increments; and (4) the law in effect on issue date of each "new" policy is applied. We note that many UIM cases have recently been vacated and remanded for further proceedings and consideration of the Ohio Supreme Court's decision in *Wolfe*. See, *e.g.*, *Coletta v. Yang* (Jan. 15, 1999), Montgomery App. No. 17289, unreported, 1999 WL 12724, vacated and remanded (2000), 88 Ohio St.3d 538, 728 N.E.2d 364, and *Stickney v. State Farm Mut. Ins. Co.* (Oct. 19, 1998), Richland App. No. 98CA7, unreported, 1998 WL 753181, vacated and remanded (2000), 88 Ohio St.3d 504, 727 N.E.2d 1286. The basis for reconsideration is that pre-amendment law may apply due to the application of the two-year guarantee period, during which policy conditions cannot be changed.

The second matter which takes priority over the amended statute is the content of the Dairyland policy. In *Fox*, we stressed that "[e]ven after amendment, R.C. 3937.18 does not establish uniform policy provisions or language, but instead sets forth a list of minimum requirements for uninsured and underinsured motorists coverage. * * * As long as insurers comply with the minimum requirements of the statute, they are free to structure their policies in any way desired. Insurers may also provide coverage that exceeds the requirements of the statute, and it is only by looking at the policy provisions that a court can decide what coverage was actually afforded." *Id.* at 4.

Consequently, our first task is to see what the policy says.

Regarding uninsured motorist benefits, the Dairyland "Plain Talk" policy provides that "[we] promise to pay the *damages you're* legally entitled to receive from the owner or operator of an uninsured motor vehicle because of bodily injury. We'll pay these *damages* for bodily injury *you* suffer in a motor vehicle

accident while occupying a motor vehicle or as a pedestrian, as a result of having been struck by an uninsured motor vehicle." (Emphasis in original.)

According to the definitions section of the policy:

"The terms that are defined below are in italics when they appear in the text of this policy:

"* * *

"Damages means the cost of compensating those who suffer bodily injury or property damage from a motorcycle accident.

"* * *

"You, your, yourself means the person named on the declarations page and that person's husband or wife if a resident of the same household."

The policy does not define "bodily injury." However, the uninsured motorist part of the policy says that "[t]his insurance covers bodily injury, including loss of services, sickness, disease or death which results from the injury, caused by a motor vehicle accident and suffered by *you*." (Emphasis in original.) An endorsement to the policy indicates that UIM insurance is included within uninsured motorist insurance.

As we read the above provisions, UIM coverage under the Dairyland policy was restricted to bodily injury and loss of services suffered by Debra (the named insured) and her husband, Richard, assuming that Richard and Debra lived in the same household. Specifically, the policy promises to pay damages "you're legally entitled to recover." "You or your" is restricted by the policy to the named insured and his or her spouse. Therefore, only Debra and Richard could make UIM claims under the policy.

An endorsement to the policy adds that "[w]e will pay under this coverage only after the limits of liability under any applicable bodily injury bonds or policies have been exhausted by payment of judgments or settlements." Based on this provision, Dairyland had no duty to pay UIM coverage until the tortfeasor's liability limits were paid. This is not an issue in the case, as the tortfeasor's liability limits were admittedly exhausted.

As we mentioned earlier, the Dairyland UIM limits of liability were $50,000 per person and $100,000 per accident. In the uninsured motorist insurance section of the policy, Dairyland states:

"[T]he limit of uninsured motorist insurance shown on the declarations page for 'each person' is the maximum we'll pay in *damages* for bodily injury to any one person.

"The maximum we'll pay in *damages* for bodily injury to two or more persons is the amount shown on the declarations page for 'each accident.'" (Emphasis in original.)

As we said, the policy does not generally define "bodily injury." However, the policy does say with regard to UIM coverage that it covers "bodily injury, including loss of services * * * which results from the injury * * * caused by a motor vehicle accident and suffered by" the named insured and spouse. Therefore, under the policy, the total maximum amount of damages Dairyland had to pay to Debra for her bodily injury and to Richard for his loss of consortium was $50,000.

■ According to the policy endorsement, Dairyland could reduce the amount of damages payable for uninsured motorists insurance "by the amount paid by or on behalf of anyone responsible for *your* injury" (emphasis in original.) This provision would allow Dairyland to offset payments made by the tortfeasor to the named insured (Debra) for her bodily injury and to Debra's spouse (Richard) for his loss of services injury. Consequently, under the policy, Dairyland could potentially set off from its $50,000 policy limits (1) the $5,000 that Debra recovered and (2) the $10,000 Richard recovered.

The endorsement also stated that "[u]nderinsured motorists insurance is available only when all bodily injury liability bonds or policies covering persons liable to *you* are less than, or have been reduced by payment to persons other than *you* insured [*sic*] in the accident to less than the limits of uninsured motorist insurance provided by this policy. The limit of liability under this insurance will be reduced by all sums paid because of bodily injury by or on behalf of persons who may be legally responsible."[1] (Emphasis in original.)

Read literally, the last sentence of this provision would allow setoff of any amounts paid by a tortfeasor's insurer, even if the payments were not made to someone insured under the Dairyland policy. However, if the policy is interpreted in this way, UIM coverage would be virtually nonexistent in certain circumstances. To take a concrete example, assume that three strangers were injured in the accident, and that Nationwide's policy paid $12,500 to Debra, $12,500 to another injured party, and $25,000 to the third injured party. Based on an unrestricted reading of the above provision, Dairyland could set off $50,000 against its own policy limits and would not pay Debra anything, despite the fact that she recovered only $12,500 from the tortfeasor. Under this interpretation, an insured could also be deprived of any recovery at all if the tortfeasor's total coverage was exhausted by payments to persons who were not insured by

---

1. We assume that the policy contains a typographical error, and that the word "insured" was intended to be "injured." Otherwise, the provision makes no sense.

Dairyland. Clearly, this is not permissible, since the insured would have no recovery, despite paying Dairyland a premium for coverage. Even Dairyland has not argued for such an interpretation of its policy.

■■ As an additional point, if this section of the policy is read without any restriction, it conflicts with the section we previously discussed, which states that damages can be reduced "by the amount paid by or on behalf of anyone responsible for *your* injury." As we said, this allowed Dairyland to reduce damages by payments made for the bodily injury to Debra and for Richard's loss of consortium. Ohio follows the rule that "[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380. Further, for many years, Ohio has applied the rule that "contracts must be given a just and reasonable construction in order to carry out the presumed intent of the parties." *E.S. Preston Associates, Inc. v. Preston* (1986), 24 Ohio St.3d 7, 10, 24 OBR 5, 8, 492 N.E.2d 441, 444–445.

Based on the above principles, the reading of these provisions that makes sense is for Dairyland's limits of liability to be reduced only by sums paid to persons who are "insureds" or are entitled to make UIM claims under the Dairyland policy. Our interpretation is consistent with the observations of the Seventh District in *King v. W. Res. Group* (Dec. 1, 1997), 125 Ohio App.3d 1, 707 N.E.2d 947. In that case, the court said, when interpreting the phrase "available for payment":

"[B]oth parties appear to agree with the trial court's ruling that 'available for payment' as used in R.C. 3937.18(A)(2) can only mean available for payment to the insureds. In this respect we agree, it making little sense to permit an insurer to offset from its obligations amounts that a tortfeasor's carrier happens to have paid to injured parties other than the insureds. Indeed, the trial court cogently remarked that if Lighting Rod [the insurer] could deduct payments made to claimants other than the insureds, then under certain circumstances the insureds would receive nothing from their underinsured motorist coverage and nothing from the tortfeasor." *Id.* at 9, 707 N.E.2d at 952.

In this case, Debra and Richard are the only people entitled to make claims under the Dairyland policy. Debra's daughter, Leah, is not entitled to make a claim, and under Dairyland's own policy terms, the $10,000 paid to Leah may not be set off against the $50,000 per person UIM limits.

The issue still remains whether Dairyland's setoff of the $10,000 paid to Richard is permissible under the amendments to R.C. 3937.18. Debra contends that this issue is controlled by our decision in *Fox* and by the Ohio Supreme

Court decision in *Motorists Mut. Ins. Co. v. Andrews* (1992), 65 Ohio St.3d 362, 604 N.E.2d 142. In contrast, Dairyland contends that *Andrews* has been superseded by the amendment of R.C. 3937.18. Dairyland also claims that *Fox* is distinguishable because it involved multiple claimants who were injured and who received payments from the tortfeasor's liability carrier. More pertinent, according to Dairyland, are two cases which allowed offset of amounts "available to, but not necessarily recovered by, an insured." See *King v. W. Res. Group* (1997), 125 Ohio App.3d 1, 707 N.E.2d 947, and *Stickney* (Oct. 19, 1998), Richland App. No. 98CA7, unreported, vacated and remanded (2000), 88 Ohio St.3d 504, 727 N.E.2d 1286, reconsideration granted (2000), 89 Ohio St.3d 1471, 732 N.E. 2d 1001.

However, we need not reach these issues, as the matter is controlled by the policy terms and by R.C. 3937.18(H). Specifically, R.C. 3937.18(H) says that an insurance policy which has UIM coverage "may, notwithstanding Chapter 2125. of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident."

As we mentioned earlier, the policy indicates that the per person limit is the maximum Dairyland will pay for bodily injury to one person. In this case, only one person suffered bodily injury. Additionally, the policy says that "[t]he limit of liability under this insurance will be reduced by all sums paid because of bodily injury by or on behalf of persons who may be legally responsible." Notably, the policy does not say that liability will be reduced by sums "available for payment." Instead, it simply refers to "all sums paid." As we have interpreted the policy, that does not mean sums paid to Debra's daughter but does mean all sums paid to Dairyland insureds because of Debra's bodily injury, *i.e.,* the amounts paid collectively to Debra and Richard. In this regard, we feel both the insured and insurer should be bound by the terms of the policy.

Furthermore, our interpretation avoids potential problems with collusive behavior in structuring distribution of liability proceeds. As we stressed in *Fox:*

"R.C. 3937.18, as amended, does not provide for excess insurance. However, we do not believe that compensating an insured up to the policy limits (and allowing setoff of amounts recovered from the tortfeasor, if the policy so provides) converts an UIM policy into excess insurance. Instead, the insured is simply being given what is mandated by the statute, i.e., a recovery that is neither greater nor less than what the insured would receive if the tortfeasor had no insurance." *Id.* at 9.

In this case, if the tortfeasor lacked insurance, Debra and Richard could collectively have received a maximum of $50,000 from Dairyland, and that is the total amount they are entitled to receive. Furthermore, an insured's unilateral choice to allocate a greater share of proceeds to one party is not a persuasive basis for increasing coverage. (*Cf. Fox*, where the UIM carrier consented to the distribution.) Accordingly, Dairyland may set off the $15,000 paid collectively to Richard and Debra by Nationwide.

As an aside, we note that a great deal of confusion and uncertainty exists in the area of uninsured/underinsured motorist law due to the many legislative changes and conflicting court decisions. As Judge O'Neill of the Eleventh District pointed out in a dissenting opinion in *Maric v. Adams* (Mar. 31, 2000), Lake App. No. 98-L-142, unreported, 2000 WL 523007, "[i]t is no longer possible to intelligently buy automobile insurance without the assistance of an attorney in Ohio." *Id.* at 7. Referring to the particular case at hand, Judge O'Neill observed that "[t]his tragic death case represents one more dune which has been built on the sea of shifting sands known as underinsured motorist coverage." *Id.*

We agree with these comments. Moreover, no end appears in sight, given the recent Ohio Supreme Court decisions in *Wolfe, supra,* and *Moore v. State Auto. Mut. Ins. Co.* (2000), 88 Ohio St.3d 27, 723 N.E.2d 97, which are likely to elicit further legislative response. Hopefully, some clarity will eventually be brought to this complex and needlessly obtuse area of the law.

In light of the foregoing discussion, the single assignment of error is sustained. The trial court decision is reversed, and this case is remanded for entry of a declaration that Dairyland may offset $15,000 against its UIM policy limits. Further, the entry should provide that Debra Butler–Peak may recover a maximum of $35,000 from Dairyland.

*Judgment accordingly.*

GRADY, P.J., and FAIN, J., concur.