James T. CORR, Appellant–Plaintiff,

v.

Glenn SCHULTZ and Glenn Schultz Agency, Inc., Appellees–Defendants.

No. 71A03–0006–CV–217.

Court of Appeals of Indiana.

Feb. 28, 2001.

Michael J. Anderson, Anderson, Agostino & Keller, P.C., South Bend, IN, Attorney for Appellant.

Sean E. Kenyon, Robert J. Konopa, Konopa & Murphy P.C., South Bend, IN, Attorneys for Appellees.

**OPINION**

KIRSCH, Judge.

James T. Corr appeals from the trial court's grant of summary judgment in favor of Glenn Schultz and Glenn Schultz Agency, Inc. (collectively "Schultz") on his claim for negligence based on Schultz's change of Corr's underinsured motorist coverage on his automobile insurance policy.

We reverse.

## FACTS AND PROCEDURAL HISTORY

On June 8, 1997, Janel Lacee Corr was a passenger in a 1995 Dodge Caravan driven by Andres Balderas. The vehicle was involved in a one-car accident; five of the occupants of the vehicle were seriously injured, including Janel Corr, who died as a result of her injuries. At the time of the accident, the owner of the vehicle, Balderas's father, had an automobile liability policy in effect for the vehicle with State Farm Mutual Auto Insurance Company. The bodily injury liability policy limits were $100,000 per person and $300,000 per accident. In addition, Balderas's mother had an insurance policy from Automobile Club of Michigan Insurance Group that included the same $100,000 per person and $300,000 per accident limits.

The two insurance companies tendered the amount of their policy limits to the trial court and filed an action to determine the proper apportionment of the proceeds among the many injured parties. Following mediation, the parties agreed on a scheme under which the Corrs would receive $115,000 for the loss of Janel.[1]

In November 1996, James Corr had an insurance policy in effect on his car through American Family Insurance which provided underinsured motor vehicle coverage of $250,000 per person and $500,000 per accident. At some time prior to the accident, Corr noted that the premiums for the policy were excessive. He talked with his insurance agent, Schultz, about how to lower the premiums. In response, Schultz lowered the underinsured motor vehicle policy limits to $100,000 per person and $300,000 per accident. These limits were in effect at the time of the accident. Also at the time of the accident, Pamela Corr, Janel's mother, had underinsured motor vehicle coverage on her vehicle with policy limits of $100,000 per person and $300,000

per accident. When Corr claimed against his policy for the loss of Janel, American Family denied the claim, believing that Corr's underinsured motor vehicle coverage did not apply because Balderas's car was not underinsured.

Corr filed separate complaints against Schultz for negligence and against American Family seeking a declaratory judgment on the policy limits. Both courts granted summary judgment for the defendants.[2] In this appeal, Corr attacks the summary judgment in favor of Schultz.

## DISCUSSION AND DECISION

Corr contends that the trial court erred in granting Schultz's motion for summary judgment because the minivan in which Janel was riding was an underinsured motor vehicle pursuant to Indiana law and his insurance policy. We note that Corr's theory of liability against Schultz was negligence based on Schultz's allegedly unilateral action in lowering the policy limits on the underinsured motorist coverage. However, for purposes of the summary judgment motion, the trial court treated Corr's allegation as true. That is, even assuming that Schultz acted unilaterally and without authorization in lowering the policy limits, the trial court determined that Schultz was entitled to summary judgment on Corr's claim.

 "The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which can be determined as a matter of law." *Bamberger & Feibleman v. Indianapolis Power & Light Co.*, 665 N.E.2d 933, 936 (Ind.Ct.App.1996); *see* Ind. Trial Rule 56(C). In reviewing a motion for summary judgment, we apply the same standard as the trial court, and we resolve any question of fact or an inference to be drawn therefrom in favor of the non-moving party. *Bamberger*, 665 N.E.2d at 936. We

---

1. The Corrs are divorced. Janel spent an equal amount of time with each of them. Accordingly, they divided the sum equally, and each received $57,500.

2. The Corrs appealed the grant of summary judgment in favor of American Family separately under cause number 71A03–0003–CV–85.

will affirm a trial court's grant of summary judgment if it is sustainable on any theory supported by the designated evidence. *Id.* Finally, the party appealing the trial court's denial or grant of summary judgment bears the burden of persuading us that the trial court erred. *Irvine v. Rare Feline Breeding Center, Inc.,* 685 N.E.2d 120, 123 (Ind.Ct.App.1997), *trans. denied.*

■ Schultz maintains that Balderas's vehicle was not underinsured and therefore Corr's underinsured motorist coverage does not apply to this accident. IC 27–7–5–4 defines the term "underinsured motor vehicle" as follows:

"For the purpose of this chapter, the term underinsured motor vehicle, subject to the terms and conditions of such coverage, includes an insured motor vehicle where the limits of coverage available for payment to the insured under all bodily injury liability policies covering persons liable to the insured are less than the limits for the insured's underinsured motorist coverage at the time of the accident, but does not include an uninsured motor vehicle as defined in subsection (a)."

Schultz asserts that this statute dictates that the proper analysis is to compare the total limits of bodily injury coverage available under the policies covering Balderas with the underinsured motorist policy limits on Corr's policy. Indeed, this is the approach recently taken in a memorandum decision by another panel of this court in *Corr v. American Family Ins.,* 71A03–0003–CV–85, slip op. at 7–8, 742 N.E.2d 43 (Ind.Ct.App. Dec. 28, 2000), which held that the correct analysis was to compare the $600,000 per accident bodily injury liability limit under the two policies covering Balderas to the $600,000 per accident underinsured motor vehicle limit of the policies under which Janel was an insured.

This approach, however, leads to the anomalous result that when multiple people are injured in an accident, an injured party is in a better position if the driver responsible for the accident is not insured at all than if he or she has insurance. For instance, here, if Balderas had had no insurance, Corr's uninsured motorist coverage would clearly have applied and he would have been entitled to claim up to $250,000.[3] Because Balderas did have coverage, Schultz now argues that the correct result is for Corr to recover only $57,500, in spite of the fact that the coverage he purchased and bargained for in both situations *is the same.* We do not believe the legislature could have intended such a result.

Schultz relies on *Allstate Ins. Co. v. Sanders,* 644 N.E.2d 884, 885–86 (Ind.Ct. App.1994) to support his argument that a policy limits-to-policy limits comparison is mandated. In *Sanders,* two brothers riding in a vehicle were seriously injured by the negligence of a driver, Hartgraves. Hartgraves's insurer paid the $100,000 policy limits, $50,000 to each of the men. Both men then claimed against their policy, which had underinsured motorist coverage of $100,000. Their insurer denied their claims. After they filed suit, the insurer moved for judgment on the pleadings, which the trial court denied.

On appeal, the *Sanders* court determined that the insurer was entitled to judgment on the pleadings because Hartgraves was not an underinsured motorist according to the terms of the statute. In doing so, the *Sanders* court determined that the proper analysis is to compare "the tortfeasor's per accident liability coverage with the insured's underinsured motor vehicle coverage." *Id.* at 886. The court rejected the plaintiffs' argument that the reference to "the insured" in the statute means each individual insured, stating that accepting such argument "would create for an insurer potential unlimited underinsurance liability based on the number of injured persons who qualify as insured under a policy." *Id.* at 887.

---

3. Pursuant to Schultz's stipulation for purposes of the motion for summary judgment, we assume that $250,000 is the proper amount. We express no opinion as to the proper resolution of the parties' dispute as to the amount of coverage.

In reaching its decision, the *Sanders* court relied on the Colorado case of *Leetz v. Amica Mut. Ins. Co.*, 839 P.2d 511 (Colo.Ct.App.1992). In that case, Leetz was killed and three other people riding in the same car were injured when a negligent driver struck them. The liable driver had liability coverage of $25,000 per person and $50,000 per accident. Accordingly, the insurer paid $50,000 to the injured parties; Leetz's heirs received $16,000 of that amount. Leetz's heirs then made a claim against the underinsured motorist provision of the policy of the driver of the car in which Leetz was riding, which had a single underinsured motor vehicle limit of $50,000. The court determined that Leetz's heirs could not make a claim because the coverage did not apply. In doing so, the court compared the limit of coverage of the liable driver applicable to the accident in question, here $50,000, to the underinsured motor vehicle coverage policy limit, also $50,000. Because these amounts were the same, the court held that the liable driver was not underinsured. *Id.* at 513.

The statute which the Colorado court interpreted in *Leetz* was different from the Indiana statute at issue here. This difference is critical. The provision of the Colorado statute which the court determined dictated this result read as follows: "An underinsured motor vehicle is a land motor vehicle [which] is insured ... but the limits of liability for bodily injury or death ... are: (a) Less than the limits for uninsured motorist coverage under the insured's policy[.]" *Id.* at 512 (quoting § 10–4–609(4), C.R.S. (1987 Repl.Vol. 4A)). Thus, the statute expressly dictated a limits-to-limits comparison. Such is not the case in Indiana, where the statute turns on the coverage *available for payment to the insured*—not the coverage available under the policy. Had the legislature intended a strictly limits-to-limits comparison, it could have expressed that. However, it instead used the phrase "available for payment to the insured." This must mean something different.

Our survey of the statutes of other states reveals several different formulations of underinsured motor vehicle coverage, some of which dictate a limits-to-limits analysis. *See, e.g.*, MASS. GEN. L. ch. 175, § 113L2. Because the statutory language differs, however, these cases are not persuasive authority. On the other hand, Ohio's underinsured motor vehicle statute is similar to ours. It states:

"Underinsured motorist coverage ... shall provide protection for insureds thereunder for bodily injury ... suffered by any person insured under the policy, where the limits of coverage *available for payment to the insured* under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident."

OHIO REV.CODE ANN. § 3937.18 (emphasis added). Hence, the focus of the Ohio statute, like Indiana's, is the amount available for payment to the insured under the policy. Ohio appellate courts have split on the proper interpretation of the provision. Thus, the question of whether this statute dictates a policy limits-to-policy limits comparison is currently before the Ohio supreme court. *Maric v. Adams*, 89 Ohio St.3d 1488, 734 N.E.2d 376 (2000).

The Ohio statute was amended in October 1994. Prior to that, the statute focused on the amount of damages the insured actually recovered. *See discussion in Smith v. State Farm Ins. Cos.*, 2000 WL 1593284 (Ohio Ct.App.2000). While some courts have interpreted the change to the "amounts available for payment" to require looking to the policy limits, other courts, noting that the legislature could

have easily said that if such was the intent, have offered the more reasonable explanation of the language as requiring exhaustion of benefits:

"By eliminating the 'actually recovered' language, the amended version requires the insured receive payment of all available amounts from the tortfeasor's liability carrier before seeking uninsured benefits from its own policy. It does not, however, require a 'limits to limits' comparison."

*Id.* at *5. *See also Butler–Peak v. Cunningham*, 138 Ohio App.3d 334, 741 N.E.2d 219 (2000); *Pearson v. Motorists Ins. Cos.*, 2000 WL 1239917 (Ohio Ct.App. 2000). *But see Carroll v. Nationwide Mut. Ins. Co.*, 2000 WL 1781332 (Ohio Ct.App.2000) (law requires limits to limits comparison); *Coffield v. Allstate Ins. Co.*, 2001 WL 20783 (Ohio Ct.App.2000) (same).

■ We agree with the *Smith* court that the language "amounts available for payment" do not equate to "policy limits." Rather, they indicate only that the negligent party's liability coverage must be exhausted before an insured looks to his or her underinsured motor vehicle coverage for compensation. Accordingly, in this case, $57,500 of the amount of coverage of the policies on Balderas was available for payment to Corr. The limits of his underinsured motorist coverage were $250,000 per person. Therefore, Balderas was an underinsured motorist according to the statute.

In so holding, we note our supreme court's expression of the purpose of underinsured motorist coverage: to provide broad protection to insureds injured in accidents with financially irresponsible motorists. *United Nat'l Ins. Co. v. DePrizio*, 705 N.E.2d 455, 464 (Ind.1999). The court explained:

"[U]nderinsured motorist coverage is designed to provide individuals indemnification in the event negligent motorists are not adequately insured for damages that result from motor vehicle accidents, and has generally been integrated into a given state's uninsured motorist legisla-

tion by modifying the definition of an "uninsured motorist." Together, these coverages serve to promote the recovery of damages for innocent victims of auto accidents with uninsured or underinsured motorists. Given the remedial nature of these objectives, uninsured/underinsured motorist legislation is to be liberally construed. Moreover, like all statutes relating to insurance or insurance policies, uninsured/underinsured motorist statutes are to be read in a light most favorable to the insured."

*Id.* at 459–60 (citations omitted). The court explained that the statute requiring insurers to offer uninsured/underinsured motor vehicle coverage is a mandatory coverage, full-recovery, remedial statute. *Id.* at 460. The court concluded that the history of expansive amendments to the statute manifested an intent by the legislature to give insureds the opportunity for full compensation for injuries inflicted by financially irresponsible motorists. *Id.* at 461.

The other panel that recently examined this issue decided that Corr reads this language too broadly. We respectfully disagree. Moreover, we disagree with the *Sanders* court that this interpretation leaves insurers open to limitless liability. The liability of an insurer is capped in all cases by its policy limit.

■ We turn now to the terms of the policy at issue here. The underinsured motorist coverage states that it applies when an insured is injured by a motor vehicle which has a policy that "provides bodily injury limits less than the limits of liability of [the underinsured motorist coverage.]" *Record* at 54. This provision would seem to dictate a policy limits-to-policy limits comparison as well. Doing so here, however, would provide less coverage than that defined by the statutory definition of such coverage, as explained above. Although parties are free to contract to limit liability, because the underinsured motor vehicle coverage law is remedial and protective, insurers may not offer less coverage than the law requires. *See Scalf v.*

*Globe Am. Cas. Co.,* 442 N.E.2d 8, 10 (Ind.Ct.App.1982), *trans. denied* (1983) (any limiting language in policy that has effect of providing less coverage than that made obligatory by uninsured motorist statute is contrary to public policy and of no effect). Accordingly, to the extent that the policy provision affords Corr less coverage than that to which he is entitled by law, it is void. Balderas's car was an underinsured vehicle according to the law and insurance policy, and Schultz therefore was not entitled to summary judgment.

Reversed.[4]

VAIDIK, J., concurs.

NAJAM, J., concurs with separate opinion.

NAJAM, Judge, concurring.

I concur in this opinion and the conclusion that Balderas's car was an underinsured vehicle under Indiana law and, therefore, that Schultz was not entitled to summary judgment. I write separately, however, to explain my reasons for reaching a conclusion different from that which I reached as a member of another panel that recently issued the memorandum decision in a companion case, *Corr v. American Family, Ins.,* No. 71A03–0003–CV–85, 742 N.E.2d 43 (Ind.Ct.App. December 28, 2000).

In this case, as in many cases, a credible argument can be made to support the position taken by either party. In *Corr v. American Family,* we agreed with the appellant and relied on a previous opinion of this court, *Allstate Ins. Co. v. Sanders,* 644 N.E.2d 884 (Ind.Ct.App.1994), to support our conclusion that a policy limits-to-policy limits comparison is required in determining whether a vehicle is an "underinsured motor vehicle" pursuant to Indiana Code Section 27–7–5–4. Here, a closer look at the *Sanders* decision reveals that we relied on Colorado law to support our interpretation of the Indiana statute. That reliance

by the *Sanders* court was misplaced since, as we note, the Colorado statute defining an underinsured motor vehicle is substantially different than our statute. After further reflection, I believe that here we have made the correct decision to disagree with *Sanders* and hold that the language "amounts available for payment" used by our legislature does not equate to "policy limits." Slip op. at 9, 742 N.E.2d 43.

Cases before this court are assigned to judges at random, and I have been given the unique opportunity to consider the same issue twice. It is important that judges keep an open mind and consider well-reasoned arguments, even when they have previously taken another position. Having reconsidered the issue, I fully concur in this opinion and our interpretation of the underinsured motorist statute as applied to these facts.

4. We hereby deny Appellant's request for oral argument, finding that the parties' briefs adequately address the issue.