OPINION
{¶ 1} Appellant Indiana Insurance Company appeals from the October 18, 2002, Judgment Entry of the Stark County Court of Common Pleas granting appellees Keith Welsh's, et al., Motion for Summary Judgment and denying appellant Indiana's Motion for Summary Judgment.
 STATEMENT OF THE FACTS AND CASE {¶ 2} This lawsuit is the result of an accident that occurred on January 7, 1997. The accident occurred when Fannie Welsh was driving home from work in an automobile owned by her husband, Keith Welsh. Angela Welsh, Fannie Welsh's daughter, was also a passenger in the vehicle. The accident was the result of the negligence of Thomas Sherwood. Following the accident, Fannie Welsh prematurely gave birth to Eleni Welsh. Eleni died a few hours after delivery. At the time of the accident, Keith and Fannie Welsh resided with David and Cathleen Welsh, Keith Welsh's parents. Keith, Fannie and Cathleen were employees of Alliance Community Hospital.
 {¶ 3} Mr. Sherwood, the tortfeasor, had automobile liability coverage with limits of $100,000.00 per person and $300,000.00 per accident. After a civil action was filed against Sherwood, Keith Welsh, as the administrator of the Estate of Eleni Welsh, settled in August of 1997 with Sherwood for the liability limits of $100,000.00. The Stark County Probate Court divided this settlement among Keith and Fannie Welsh, the parents of Eleni Welsh, and Cathleen and David Welsh, the paternal grandparents of Eleni Welsh. Veneta Lalli, the maternal grandmother of Eleni Welsh, did not receive any of the settlement proceeds nor did she attend the hearing in probate court.
 {¶ 4} On June 22, 2001, appellees filed a declaratory judgment action in the Stark County Court of Common Pleas, seeking coverage under nine policies pursuant to R.C. 3937.18 and the Ohio Supreme Court's decision in Scott-Pontzer v. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292, 710 N.E.2d 1116. Alliance Community Hospital had the following policies in effect on the date of the accident: (1) a business auto policy providing UM/UIM coverage issued by Indiana; (2) a commercial general liability policy containing a non-owned and hired auto endorsement issued by OHIC Insurance Company; and (3) an umbrella policy issued by OHIC. Only appellees Keith, Fannie, Cathleen and David Welsh, in their individual capacities, and the Estate of Eleni Welsh sought damages under Indiana's policy.
 {¶ 5} David Welsh was employed by R. Kurtzman on the date of the accident. R. Kurtzman had the following policies in effect issued by The Insurance Company of the State of Pennsylvania ("ISOP"): (1) a commercial automobile policy; and (2) a commercial general policy.
 {¶ 6} Veneta Lalli, the maternal grandmother of Eleni Welsh, was employed at Coastal Pet Products, Inc., ("Coastal Pet") on the date of the accident. Coastal Pet had the following policies in effect issued by Westfield Insurance Company ("Westfield"): (1) a business automobile policy providing UM/UIM coverage; (2) a commercial general liability policy; and (3) a commercial umbrella policy. Veneta Lalli also sought UIM benefits under her personal auto policy issued by Allstate Insurance Company ("Allstate").
 {¶ 7} In addition to seeking coverage under such policies, appellees, in their complaint for declaratory judgment, further requested the trial court order the parties to binding arbitration to determine the issue of total damages.
 {¶ 8} Subsequently, all parties filed motions for summary judgment. As memorialized in a Judgment Entry filed on October 18, 2002, the trial court granted appellees' motion for summary judgment while denying ISOP, OHIC, Westfield, Indiana and Allstate's motions for summary judgment. The trial court also ordered all parties to binding arbitration to determine the issue of total damages. The trial court did not determine whether the policies must pay on a primary, excess or pro rata basis.
 {¶ 9} Indiana, OHIC[1], Westfield[2] and ISOP[3] all filed separate notices of appeal. The matter currently under consideration concerns the appeal filed by Indiana. Indiana raises the following assignments of error for our consideration:
 {¶ 10} "I. WHETHER THE TRIAL COURT SHOULD HAVE GRANTED SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLANT INDIANA INSURANCE COMPANY BECAUSE PLAINTIFFS-APPELLEES BREACHED THE NOTICE AND SUBROGATION CONDITIONS TO COVERAGE UNDER THE INDIANA POLICY?
 {¶ 11} "II. WHETHER THE TRIAL COURT SHOULD HAVE GRANTED SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLANT INDIANA INSURANCE COMPANY BECAUSE PLAINTIFFS-APPELLEES ARE NOT LEGALLY ENTITLED TO RECOVER FROM THE OWNER OR OPERATOR OF AN UNDERINSURED MOTOR VEHICLE?
 {¶ 12} "III. WHETHER THE TRIAL COURT SHOULD HAVE ORDERED THE TORTFEASOR'S LIMITS ARE OFFSET FROM ANY AVAILABLE UIM COVERAGE?"
"Summary Judgment Standard"
 {¶ 13} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 14} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 15} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107.
 {¶ 16} It is based upon this standard that we review appellant Indiana's assignments of error.
 {¶ 17} For purposes of clarity, we shall address appellant's assignments of error out of sequence.
 II {¶ 18} In its second assignment of error, appellant Indiana maintains that the trial court erred in denying appellant's Motion for Summary Judgment because appellees are not "legally entitled to recover" from the owner or operator of an underinsured motor vehicle. We disagree.
 {¶ 19} Indiana claims that appellees are no longer legally entitled to recover under R.C. 3937.18(A).[4] R.C. 3937.18 provides, in relevant part, as follows:
 {¶ 20} "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:
 {¶ 21} "(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury or death under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitledto recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy.
 {¶ 22} "For purposes of division (A)(1) of this section, a person is legally entitled to recover damages if he is able to prove the elements of his claim that are necessary to recover damages from the owner or operator of the uninsured motor vehicle. The fact that the owner or operator of the uninsured motor vehicle has an immunity, whether based upon a statute or the common law, that could be raised as a defense in an action brought against him by the person insured under uninsured motorist coverage does not affect the insured person's right to recover under his uninsured motorist coverage.
 {¶ 23} "(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." (Emphasis added).
 {¶ 24} Indiana maintains that appellees are not "legally entitled to recover" because the two-year limitations period contained in the wrongful death statute, R.C. 2125.02(D), expressly provides that "[a]n action for wrongful death shall be commenced within two years after the decedent's death." Appellees' wrongful death cause of action accrued on January 7, 1997, the date of Eleni Welsh's death. Therefore, no wrongful death action could be brought after January 7, 1999. Appellees filed this action on June 25, 2001, well beyond the two year limitation for a wrongful death. Appellant argues that, since a wrongful death action can no longer be brought, appellees are no longer legally entitled to recover from the tortfeasor.
 {¶ 25} In turn, appellees respond that the phrase "legally entitled to recover" has nothing to do with the time limits on wrongful death actions and the fact that the statute of limitations has expired against the tortfeasor does not mean that appellees are no longer "legally entitled to recover." Instead, appellees contend the phrase "legally entitled to recover" means that appellees are able to prove that the tortfeasor was at fault and as a result of the tortfeasor's negligence, they have been damaged.
 {¶ 26} As this Court recently noted in Haney v. Motorist Mut.Ins. Co. Tusc. App. No. 2002AP110093, 2003-Ohio-3412, "the phrase `legally entitled to recover' means the insured must be able to prove the elements of his or her claim" against the tortfeasor. See Ohayon v.Safeco Ins. Co. of Illinois, 91 Ohio St.3d 474, 484, 2001-Ohio-100,747 N.E.2d 206, citing Kurent v. Farmers Ins. of Columbus (1991),62 Ohio St.3d 242, 245, 581 N.E.2d 533 and State Farm Auto Ins. Co. v.Webb (1990), 54 Ohio St.3d 61, 62, 562 N.E.2d 132, 133.
 {¶ 27} We note that the "legally entitled to recover" phrase is only found in division (A)(1) of R.C. 3937.18, which only applies to "uninsured motorist coverage." Unlike division (A)(1), the phrase "legally entitled to recover" does not appear in division (A)(2), which applies to underinsured motorist coverage. Had the legislature intended the phrase to apply to underinsured motorist coverage, it would have inserted the "legally entitled to recover" language in division (A)(2). Because the case sub judice involves underinsured motorist coverage as set forth in division (A)(2), we find that the appellees were not required to be "legally entitled to recover" to receive underinsured benefits.
 {¶ 28} Assuming, arguendo, that the statutory "legally entitled to recover" qualification does apply to underinsured motorist coverage, we find the definition ambiguous. Specifically, R.C. 3937.18 does not define at what point in time the determination whether an insured is legally entitled to recover against the owner or operator of the uninsured vehicle is to be made. Although division (A)(1) uses the present tense twice in conjunction with the phrase "legally entitled to recover," it does not indicate at what point in time the determination is to be made.
 {¶ 29} If, in determining whether appellees are "legally entitled to recover," we look to the date of the accident, then appellees are "legally entitled to recover" since, at such point in time, they were able to prove both liability and damages. See Sumwalt v. Allstate Ins.Co. (1984), 12 Ohio St.3d 294, 466 N.E.2d 544. Because of the ambiguity in the statute as to when the insured must be "legally entitled to recover" and because R.C. 3937.18 is a remedial statute to be liberally construed to give effect to the remedy it provides, the fact that appellees did not seek UIM coverage until after the expiration of the two year statute of limitations contained within R.C. 2125.02(d), does not serve as a basis to deny UM/UIM coverage.
 {¶ 30} We further note that, in the case sub judice, the subject policy itself contains "legally entitled to recover" language.[5]
Specifically, Indiana's Ohio Uninsured Motorists Coverage Endorsement states, in part, as follows: "We will pay all sums the `insured' is legally entitled to recover as compensatory damages from the owner or driver of an `uninsured motor vehicle' because of `bodily injury' sustained by the `insured' caused by an `accident'". An "uninsured motor vehicle" is defined as including an underinsured motor vehicle.
 {¶ 31} Cases interpreting insurance policies containing "legally entitled to recover" language have held that such language is ambiguous. While we recognize that some courts, including the Fourth District Court of Appeals in Hutchison v. Midwestern Indemn. Co. (Aug. 5, 1987), Ross App. No. 1352, and Hutchison v. Midwestern Indemn. Co. (March 2, 1989), Ross App. No. 1496, have held that an appellant who failed to bring a wrongful death action against the tortfeasor within the two year statute of limitations was no longer "legally entitled to recover damages" from the tortfeasor, we agree with the reasoning in Ohio Farmers Ins. v.Binegar (Jan. 7, 1994), Montgomery App. No. 13906. In Binegar, the insurance company argued that Laurie Binegar, Administrator of the Estate of Delbert Binegar, was not entitled to UIM coverage since Binegar had failed to bring a wrongful death action against the tortfeasor within the two year time limit provided in the wrongful death statute. The trial court agreed and, for such reason, found that the Estate of Delbert Binegar was not legally entitled to collect from the insurance company since it had allowed the wrongful death claim against the tortfeasor to lapse due to the passage of time.
 {¶ 32} However, the Court of Appeals, in Binegar, reversed the trial court, holding, in relevant part, as follows: "We note that the 4th District Court of Appeals has construed the phrase `legally entitled to recover' to exclude an insured who fails to file a wrongful death action within the statutory period. Hutchinson v. State Automobile MutualInsurance Co. (August 5, 1987), Ross App. No. 1304, unreported; andHutchinson v. Midwestern Indemnity Co. (August 5, 1987), Ross App. No. 1352, unreported.
 {¶ 33} "The policy requirement that an insured must be `legally entitled to recover damages' is reasonably susceptible of at least two interpretations: (1) that the insured's legal entitlement to recover damages against the tortfeasor is a condition of the accrualof a claim under the policy; or (2) the insured's legal entitlement to recover damages against the tortfeasor is a condition of the assertion of a claim under the policy. Under the former interpretation, Binegar was legally entitled to recover damages against the tortfeasor upon the decedent's death, so that at that point a claim accrued under the policy. Under the latter interpretation, Binegar could have asserted a claim under the policy immediately following the decedent's death, but lost the ability to assert a claim once it became too late to file a wrongful death action against the tortfeasor.
 {¶ 34} "Both interpretations are plausible. The first is more consistent with the basic concept of underinsured motorist coverage as a means of insuring the collectibility of liability against a tortfeasor in a motor vehicle accident. The second would be a way of providing the insurer with notice of a claim while there is still a possibility of recovering damages from the tortfeasor. However, the provision is not worded in language suggestive of a purpose of assuring notice.
 {¶ 35} "Where terms of an insurance contract are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured. Kingv. Nationwide Insurance Co. (1988), 38 Ohio St.3d 208." Id. at 4. (Emphasis added.) The court, in Binegar, held that the term "legally entitled to recover damages" was reasonably susceptible of more than one interpretation and that there was no language in the subject insurance policy clearly and unambiguously putting the insured on notice that it established a time limit within which to make a claim for UIM benefits. The court found that the language in the policy did not clearly and unambiguously reduce from fifteen years to two years[6] the time in which an action for UIM benefits on the contract at issue could be brought. See also Hatcher v. Grange Mut. Cas. Co. (Dec. 14, 1993), Franklin App. No. 93 AP-882.
 {¶ 36} Likewise, in the case sub judice, the subject insurance policy does not define the phrase "legally entitled to recover damages" and does not indicate when the insured must be "legally entitled to recover damages" from the tortfeasor. The policy "does not even contain a provision which purports to limit the time for bringing a claim for uninsured motorist coverage." See Hatcher, supra. at 3. Applying Binegar, we find that the policies, therefore, are ambiguous. Pursuant to King, supra., such ambiguity must be construed in favor of appellants. Construing such ambiguity in appellants' favor, we find that appellant's legal entitlement to recover damages against the tortfeasor was a condition of the accrual of a claim under the insurance policies. Therefore, appellants were legally entitled to recover damages against the tortfeasor, upon Eleni's death, "so that at that point a claim accrued under the policy." See Binegar, supra. At such point in time, appellants were able to demonstrate the elements of their claim against the tortfeasor and were "legally entitled to recover."
 {¶ 37} Based on the foregoing, we find that appellees were not barred from pursuing their UIM claims against appellant even though they did not timely file a cause of action against the tortfeasor.
 {¶ 38} Appellant's second assignment of error is, therefore, overruled.
 I {¶ 39} Appellant, in its first assignment of error, argues that the trial court erred in granting summary judgment to appellees because appellees breached the notice and subrogation provisions of its policy and are, therefore, precluded from recovering under Indiana's policy. Appellant contends that appellees failed to promptly notify appellant "of the accident, the loss, any legal papers or the settlement." Appellant specifically notes that while the accident occurred on January 7, 1997, appellees never notified appellant of any claim until February 8, 2001, over four years later, and that, on August 5, 1997, Keith Welsh, as administrator of the Estate of Eleni Mane Welsh, executed a release of all claims of the estate against the tortfeasor.
 {¶ 40} The business auto policy issued by appellant Indiana Insurance to Alliance Community Hospital provides as follows:
 {¶ 41} "SECTION IV — BUSINESS AUTO CONDITIONS
"* * *
 {¶ 42} "A. LOSS CONDITIONS
"* * *
 {¶ 43} "2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS
 {¶ 44} "a. In the event of `accident,' claim, `suit' or `loss,' you must give us or our authorized representative prompt notice of the `accident' or `loss.'
"* * *
 {¶ 45} "b. Additionally, you and any other involved `insured' must:
 {¶ 46} "(1) Assume no obligation * * *
 {¶ 47} "(2) Immediately send us copies of any * * * summons or legal paper received concerning the claim or `suit.'
 {¶ 48} "(3) Cooperate with us in the investigation, settlement or defense of the claim or `suit.'
"* * *
 {¶ 49} "5. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHER TO US
 {¶ 50} "If any person or organization to or for whom we make payments under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person * * * must do everything necessary to secure our rights and must do nothing after the `accident' or `loss' to impair them.
 {¶ 51} The above conditions are modified by the UIM endorsement to Indiana's business auto policy. These changes provide as follows:
 {¶ 52} "E. CHANGES IN CONDITIONS
"* * *
 {¶ 53} "2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS is changed by adding the following:
"* * *
 {¶ 54} "b. Promptly send us copies of the legal papers if a `suit' is brought.
 {¶ 55} "c. A person seeking [UIM] coverage must also promptly notify us in writing of a tentative settlement between the `insured' and the insurer of the [UIM] vehicle * * * and allow us 30 days to advance payment to that insured in an amount equal of the tentative settlement to preserve our right against the insurer, owner or operator of such vehicle * * *.
 {¶ 56} "3. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US is amended by adding the following:
 {¶ 57} "If we make any payment and the `insured' recovers from another party, the `insured' shall hold the proceeds in trust for us and pay us back the amount we have paid."
 {¶ 58} In the case of Ferrando v. Auto Owners Mut. Ins. Co.,98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927, the Ohio Supreme Court held as follows: "When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary."
 {¶ 59} "When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a consent-to-settle or other subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights. An insured's breach of such a provision is presumed prejudicial to the insurer absent evidence to the contrary." Ferrando at paragraphs one and two of the syllabus.
 {¶ 60} The Ferrando Court also articulated a two-step approach for determining whether the prompt notice and subrogation-related provisions were breached, and, if so, whether the breach resulted in prejudice to the extent that UIM coverage is then forfeited. "The two-step approach in late-notice cases requires that the court first determine whether the insured's notice was timely. This determination is based on asking whether the UIM insurer received notice `within a reasonable time in light of all the surrounding facts and circumstances.'" Ruby v.Midwestern Indem. Co. (1988), 40 Ohio St.3d 159, 532 N.E.2d 730, syllabus. If the insurer did receive notice within a reasonable time, the notice inquiry is at an end, the notice provision was not breached, and UIM coverage is not precluded. Ferrando at 208, 781 N.E.2d 927. If the insurer did not receive reasonable notice, the next step is to inquire whether the insurer was prejudiced. Id. Unreasonable notice gives rise to a presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut. Id.
 {¶ 61} In turn, "[i]n cases involving the alleged breach of a consent-to-settle or other subrogation-related clause, the first step is to determine whether the provision actually was breached. If it was not, the inquiry is at an end, and UIM coverage must be provided If the consent-to-settle or other subrogation-related clause was breached, the second step is to determine whether UIM insurer was prejudiced. If a breach occurred, a presumption of prejudice to the insurer arises, which the insured party bears the burden of presenting evidence to rebut." Ferrando, supra. at 208.
 {¶ 62} Since the trial court, in the case sub judice, did not have the benefit of the Ferrando case when deciding issues of notice and subrogation, we conclude that it is necessary to remand this matter to the trial court. Pursuant to Ferrando, we remand this matter to the trial court for the court to determine whether, "in light of all the surrounding facts and circumstances," appellees breached the prompt notice provision contained in the insurance policy issued by appellant and, if so, whether such breach prejudiced appellant. Further, on remand, the trial court shall determine whether the breach of the subrogation clause prejudiced appellant. Since appellees, by settling with the tortfeasor without first providing notice to appellant, breached the subrogation provision, the burden falls on appellees to show that appellant was not prejudiced since the breach is presumed prejudicial absent evidence to the contrary.[7] Id.
 {¶ 63} Appellant's first assignment of error is, therefore, sustained.
 III {¶ 64} Appellant, in its third assignment of error, argues that the trial court erred in failing to address appellant's argument that, if UIM coverage does exist, it is entitled to a set-off for the amounts received from the tortfeasor.
 {¶ 65} Based on our analysis and disposition of appellant's first assignment of error, we find that appellant's third assignment of error is premature.
 {¶ 66} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas, is hereby affirmed, in part, and reversed and remanded in part.
By: Edwards, J. and Hoffman, P.J., concurs.
Wise, J., dissents.
[1] Welsh v. Indiana, Case No. 2002CA00378
[2] Welsh v. Indiana, Case No. 2002CA00376
[3] Welsh v. Indiana, Case No. 2002CA00379.
[4] The S.B. 20 version of R.C. 3937.18 applies since the policy period was from April 1, 1996, to April 1, 1997. This version of the statute became effective on October 20, 1994.
[5] R.C. 3937.18 sets forth a list of minimum requirements for UM/UIM coverage. Boiler-Peak v. Cunningham (2000), 138 Ohio App.3d 334, 337,741 N.E.2d 219. "As long as insurers comply with the minimum requirements of the statute, they are free to structure their policies in any way desired." Id. R.C. 3937.18 does not contain a "legally entitled to recover" requirement for underinsured motorist coverage. We note that an argument could be made that language in an insurance policy requiring that an insured be "legally entitled to recover damages" to be entitled to underinsured motorists coverage impermissibly restricts the underinsured motorist coverage available under R.C. 3937.18.
[6] R.C. 2305.06 provides that an action upon a written contract shall be brought within fifteen years after the cause thereof accrued.
[7] Appellees, in their brief, argue that there can be no forfeiture of UIM coverage since there is no language in Indiana's auto policy which clearly and unambiguously states that violation of notice, consent and subrogation provisions results in the forfeiture of UIM benefits. However, since appellees did not raise their forfeiture argument at the trial court level, we will not consider it in addressing appellant's first assignment of error. See Ohio Edison v. Franklin Paper Co., Inc.
(1985), 18 Ohio St.3d 15, 18, 479 N.E.2d 843.